Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Patentees acquire, by virtue of their letters patent, if properly granted and in due -form, the full and exclusive right and liberty of making, using, and vending to others to, be used, their respective inventions for the term of years
 
 *593
 
 allowed by law at the time when the letters patent- were issued. Such-exclusive right and liberty may.be held and enjoyed by the patentee throughout the entire term for which it is granted; or he may assign the letters patent, by an instrument' in writing, either as to the whole interest or any undivided part thereof; or he may grant arid convey to another the exclusive right under the patent to make and use, and grant to others to make and use, the thing patented, within and throughout any specified district.
 
 *
 

 Damages may be recovered by an action on thé case for any infringement of that exclusive right and liberty; .or the party aggrieved may, in any case, at his-election, bring his suit in .equity and pray for an injunction to .prevent the violation' of the same; but the express provision is, that all such actions, suits, and controversies shall be originally cognizable, as well in equity as at-law, by the Circuit Courts of the United States, or any District Court having the powers and jurisdiction of a Circuit Court.
 
 †
 

 Jurisdiction of such cases is exclusive in the Circuit Courts, subject to writ of error and appeal to this court, ¿s provided by law; ’but the requirement is, that the suit must be brought in the name of the person or persons interested, whether patentees,^, assignees, or as grantees, as" aforesaid, pf the exclusive right within a specified locality.
 
 ‡
 

 Present suit was in equity, and was founded oh certain reissued letters patent granted to. the complainant on the twenty-eighth of June, 1864, as the assignee, by certain mesne assignments, of John Goulding, who was the original patentee, and who, as alleged, was the original and first inventor of the improvement. Original patent was granted December 15th, 1826, for the term of fourteen years, and was, as alleged, for
 
 a
 
 new aud useful improvement in the mode of manufacturing wool and other fibrous matei’ials; but the claims of the specification were defective', and' it was surrendered on that account, and reissued July 29th, 1886. for the residue of the original term;
 

 
 *594
 
 . Representations of the complainant were, that the original patentee, without any neglect or fault on his part-, failed to obtain by the use and sale of the invention a reasonable re- . numeration for his time, ingenuity, and expenses employed and incurred in perfecting the invention, and introducing . the same into use within the time for which the patent was ■ originally issued, and that he failed also, by accident and mistake, to. obtain an extension of the patent before the ex■piration of the original term.
 

 Power of the commissioner to renew and extend the patent having expired, the allegation was that the original patentee ■applied to Congress, and that Congress, on the thirtieth of . May, 1862, passed an act for his relief. Pursuant to that authority, the bill of complaint' alleged that the commissioner, thereafter, on the, thirtieth of August, in, the same year, renewed and extended the patent, in due form of law, forthe further-term of seven years from and after'that date, subject to the provisions contained in the act-conferring'the authority.
 

 Derivation of the title of the complainant is fully set forth in the bill of complaint, but it is unnecessary to reproduce it, as it is not the subject of controversy in this case. Possessed of a full title to the invention by assignments, the complainant, as such assignee, surrendered the letters patent, and the commissioner, on the twenty-eighth of June, 1864, reissued to him the original patent, as extended under the act of Congress, for the residue of the extended term.
 

 Pounded upon those letters patent, the bill of complaint alleged that the assignor of the complainant was the original and first inventor of the improvement therein described, and the charge is that the corporation respondents, having full knowledge of the premises, and in violation of the complainant’s exclusive rights and privileges, so acquired and secured, have, since the date of the reissued letters patent, and without his license or consent-, made, used, and sold, and continue to make, use, and sell, in large numbers, cards, jacks, and machinery, embracing and containing mechanism substantially the same in principle, construction, and mode
 
 *595
 
 of operation as the improvement so acquired and own'ed by the complainant.
 

 Prayer of the bill of complaint was for an account, and for an injunction, and for such other and further relief as the nature and circumstances of the ease shall require.-
 

 Respondents appeared and filed an answer, and proofs were taken by both parties, and they, were heard in the Circuit Court upon bill,- answer, replication, and proofs, and a final decree upon- the merits was rendered for the complainant, and thereupon the respondents appealed to this court.
 

 Numerous defences were.-set up in the answer, but none of them will be much considered except such as are now' urged upon the consideration of the eohrt. ■
 

 ■ The grounds of defence specially enumerated in the,brief of the appellants, and urged in argument, are as follows
 

 1. That the combinations set forth in the several claims of. the patent were first invented by one Edward Winslow, and' that- neither of them, was original with the assignor of the complainant.
 

 2. That the invention, at the time the application for the original patent was m'ade, had been on sale and in public-use, with the consent and allowance of the applicant, for more than two years, and that he had abandoned thé same to the public.
 

 3. That the reissued letters patent described in the bill of complaint are void, because they do not contain the limitations and conditions expressed in the extended patent, and were not issued in conformity with the act of Congress passed for the relief of the original patentee.
 

 4.- That the respondents’ machinery; having been in use before and at the time the patent in this case was granted, is within the saving clause of the proviso in'the said act of Congress.
 

 I. Exception might well be taken to the first proposition " upon the ground that it is' a departure from the special defence set up;in the answer,-unless-it can be admitted as included in the more general allegation, denying that the
 
 *596
 
 assignor of1'the- complainant was the original and first inventor of the improvement described in the patent.
 

 ■ Persons, sued as infringers, may plead the general issue in suits' at l'aw, and may prove, as a defence to the'charge, if they'have given the plaintiff thirty days’ notice of that-defence before the trial, that the patentee was not the priginal and first inventor of the thing patented; but the same section which authorizes such a defence provides that whenever the defendant relies in his defence on the fact of a previous invention, knowledge, or use of the thing patented, “he shall state in his notice of special matter the names and places of residence of those whom he intends to prove to have possessed a prior knowledge • of the thing, and where the same had been used.”
 
 *
 

 ‘ Evidence to prove such a defence, in a suit at law, is not admissible without an antecedent compliance with those con- . ditions, and the settled practice in equity is to require the respondent, as a condition precedent to such a defence, to give the complainant substantially the same information in his answer. Unless the practice were so, the complainant would often be surprised, as the rule -of law is that the letters patent afford a
 
 grima facie
 
 presumption that the patentee is the original and first inventor of what is therein described as his improvement, and if the respondent should not be ■ required to give notice in the answer that proofs would be ■offered to overcome that presumption and establish the opposite conclusion, very great injustice might be done, as the complainant might rely-upon that presumption and fail to take any countervailing proofs.
 
 †
 

 Better opinion is, that the defence embraced in the first proposition of the respondents, is not admissible under that allegation in the answer which denies that the assignor of the complainant was the original and first inventor of the improvement. Such a defence, if recognized at all in this case, must be admitted under that part of the answer which was evidently framed for that special purpose.
 

 
 *597
 
 ’ Substance and effect of those allegations are, that the ré-1' spondents deny that the original patentee ever bestowed any ingenuity upon the improvements, and they allege that the same were invented and applied.by one Edward Winslow, that the,patentee .first derived knowledge'of the invention, from that individual, and that the original patentéé-fraudu- ■ lently and surreptitiously obtained the patent for that which' he well knew was thé invention of his informant.
 

 ' No exception was taken to the answer in the court below, and in that state of the case the allegations of the answer,that the invention Was made by a third person and not by the assignor of the complainant, may be regarded as a good . defence, but it is quite clear that the charge that the.original ■ patentee in thi^ case fraudulently and 'surreptitiously obtained the patent for that-which he well knew was invented by- another, unaccompanied by the further allegation that the alleged first, in ventor-was-at the time ■'using reasonable diligence in adapting'and perfecting, the invention, is . not sufficient to defeat the patent, and constitutes no defence to ,-,the charge of infringement.
 
 *
 

 - . Viewed in any light the proposition'amounts to the charge .that the invention was made by "the person therein mentioned, and not by the assignor of,the complainant, and. the burden to prove -it is on thé reSpondéuts, not only because ■they make the charge, but because the presumption arising from the letters patent is .the other way.
 

 Application ■ for a patent is required to be made to the commissioner appointed under authority of law, and inasmuch as that officer is empowered to decide upon the merits ' of the application, his decision in granting tfie patent is .presumed to be correct.
 
 †
 

 Before proceeding to inquire whether or not that defence is sustained by the proofs,, it becomes .necessary to examine ' specifications and claims of the patent, and to ascertain, by . a comparison of the mechanism therein described, with the1
 
 *598
 
 antecedent state of the art, the true nature, character, and extent of the improvement.
 

 Sets of carding m'achiues, for the production of yarn from wool, were well known, and in use before the invention of the original patentee. They usually consisted, besides the spinning-jenny, of three carding machines, called the first and second breaker, and the finisher, but they could not be used to much practical advantage, in connection with the jenny, without a separate machine, called the. billy, for splicing the rolls. Two jennies were often used, instead of one, in that combination, and in some instances, two double carding machines were preferred, instead of three single machines.
 

 Like the still older carding machine, the breaker had what was called a feed-table', and the wool, previously prepared by other means, was placed on that table, and was, by that means, fed to the carding mechanism, and having passed through the carding apparatus to the delivery-end of - the machine, was stripped from the device called a dofier, arid fell to the floor. The device for stripping the filament from the dofier was a comb, which constituted a part of the machine. Second breaker was similar in construction to the first, and the process of feeding and carding was the same, but the filament from the first breaker constituted the material to be used in the second, instead of using wool prepared by hand, or from the picker, and the filament when carded and stripped from the dofier, was wound round a drum. The method of feeding the material into the carding apparatus of the finisher was also the same, but it was provided with an additional apparatus, at the delivery-end of the machine, called the roller and shell, which formed the material into short rolls. Those rolls were about the length of the card surface' of the dofier. They were taken to the billy, and were there spliced by hand, on the apron of that machine, and, as the apron moved forward, they were fed to the spindles, and converted into roving, suitable to be spun into yarn.
 

 Goulding aimed to dispense with the billy altogether, aiid
 
 *599
 
 sought to accomplish, with four machines, what had previ-' oasly required the use of five; and the evidence shows, beyond controversy, that his. invention enabled manufacturers' to produce yarn from wool, at.'much .Less cost, of better quality, and- inigreater quantity, than was produced by the old process. His purpose, also, was to dispense with short rolls, and to introduce the long or endless roll in its'plaee. Years were spent by him in experiments to accomplish these purposes, but the result was that he was successful. He dispensed altogether with the billy, and,,by a new combination1, of old devices, he obtained the endless roll, and so perfected his machinery that he could use it-successfully, from th’4 moment the roving left the- delivery-end .of the first Weaker,’ till it was converted into yarn, fit to be manufactured into cloth. -
 

 Attempt'will not be made to describe the various-plans which he formed, nor the experiments which he tried,, as it would extend the opinion to ah unreasonable length. Under his method, as described, the .wool, .as it comes from the picker, is placed on the table of the first breaker, and is fed. to the. carding apparatus as before, but the sheet of carded material, when stripped from the doffer,-is taken away oh one side- of the delivery-end- of the machine, by means of two roller's,-thro ugh a turning-tube, or pipe, to which a slow rotary movement is given by a band passing from a drum', actuated by the machine, and operating upon a pulley affixed' to the tube. Description is also given of the means by whicji the roving or sliver is condensed and wound round .the bobbin, and also of the means by which it is retained in the proper position,-and made to partake of the rotary mqvement communicated to the drum. Particular description is also, given of the means by which the roving may be evenly wound upon the. bobbins, either by carrying it and the drum -backward and forward, or by passing it between guides^ affixed to a bar, to which a similar movement is communicated.
 

 Next step is, that the bobbins, with the roving • thereon, twenty in number at least, are placed in a frame or creel, in
 
 *600
 
 order that the roving may be fed to the second carding machine, and guided into it, between certain dividing pin's, but it is taken away at the delivery-end, in' a single roving, and by 'the same means as from the first machine.
 

 Principal object in passing the material through the second breaker is, that it may be more completely mixed, so that every part of the roving will be of the same fineness. Third operation is, that the bobbins of roving, as delivered and Wound in the second breaker, are placed in a frame or creel, similar to that before described, but each roving is now do be kept separate, and certain blocks are provided for that purpose, made broader in front than behind, so that each roving shall preserve its proper situation, without mingling with those adjacent to it, during the operation of carding, and also that it may finally reach its proper place upon the delivering cards.
 

 The feeding of the material into the carding apparatus of . the finisher is accomplished in the same way as before described, but the mechanism for carding, and for delivering the roving, is more complex, and widely different. Two delivering cylinders are constructed, placed one above the other, surrounded with wire card, in strips, with uncovered spaces of equal width, and so arranged that the uncovered spaces on one cylinder-shall correspond with the strips of wire card on the other, for carding the separate rovings as 'they are fed into the carding apparatus. Different mechanism is also provided for removing the carded material from the delivering cylinders, which is accomplished by the rotary action of the tubes upon such material, by which the several filaments, as they are delivered, are.formed into a loose continuous roving, which is guided between certain pins, a.nd passed through certain rollers, in order to give the roving a sufficient cohe: rence before it is wound on to the bobbins, to be used in the jenny-
 

 _ _ Means for slightly twisting the roving as it leaves the .finisher are also described, and the directions are that the .guides of the finisher must'have a lateral motion backward and forward, so that each roving may be regularly laid side by
 
 *601
 
 •side, within its own proper limits, and the devices to accomplish that function ,are fully described. Modifications'were-also made by the inventor .in the devices ’of the carding ap*paratus of the finisher, and also 'in the- apparatus for delivering the roving in the third operation, -and for winding jt pn to the bobbins preparatory to their transfer to the jenny where'the roving is spun into yarn. Those modifications of old machinery are minutely described in the specification, ■ and it is obvious that they, are of great value in accomplishing the- final result, and- that they constitute spme of the main features of the invention.
 

 . Changes were also made in some of the,, devices of tiñe jenny, and also in their arrangement and mode of operation as compared-with prior machines, and those alterations also áre so clearly described as to constitute a full compliance with the sixth section of the patent act. Substitutes, are-suggested for • many of the described devices, but it- is not practicable to enter into those details. Separate parts of the. machinery, • as used in the several' combinations, safe not claimed by the patentee. Omitting redundant words-.the claims of the reissued patent are to the effect following:
 

 First. I claim-in combination the following sets- of-appa- ■ ratus making up á machine, namely: 1. A bbbbin-standi or.. creel. 2. Bobbins on: which roving may be-wound. -3. Guides or pins. 4.- A carding machine. ’ 5. Condensing -and- drawing-off" apparatus. 6. Winding apparatus,, whereby rovings may .be "fed to a carding machine, carded, condensed, drawn’ off" and wofind again'in a condensed state,' substantially in the manner herein set forth-.
 

 .Second. I claim the feed rollers of a carding "machine; in combination with bobbins and proper stands therefor, and guides or pins whereby slivers or rovings may be. fed tp be carded by mechanism substantially such as herein described.
 

 Third. I claim a delivering cylinder of a carding machine, in combination with apparatus for drawing off", condensing, or twisting and winding carded filaments, by apparatus substantially such as herein described.
 

 Lastly. I claim a mule or spinning-frame, próvided /with
 
 *602
 
 spindles fnounted on a carriage, and with jaws or their equivalents for retaining roving in combination with bobbins, whose axes are parallel, or nearly so, with the line of spindles, and rest upon drums revolving to unwind ,the bobbins substantially as herein set forth.
 

 Careful attention to the description of the invention and the claims of the patent, will enable the parties interested to comprehend the exact nature of thé issue involved in the first defence presented by the respondents. Purport of that defence is, that the invention was made by Edward. Wins-low, and not by the assignor of the complainant.. The settled rule of law is, that whoever first perfects a machine is entitled to the patent, and is the real inventor, although others may have previously had the idea and made some experiments towards putting it in practice. He is the inventor and is entitled to the patent who first brought the machine to perfection and made it capable of useful operation.
 
 *
 

 No one is entitled to a patent for that which he did. not invent unless he can show a legal title to the same from the inventor or by operation of law; but where a. person, has discovered an improved principle in a machine, manufacture, ' or composition of matter, and employs other persons to assist him in carrying.out that principle, and they, in the course of experiments, arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general t.o be regarded as the property of the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention.
 

 Suggestions from another, made during the progress of such experiments, in order that they may be sufficient' to defeat a patent subsequently issued, must have embraced the plan of the impi’ovement, and must have furnished such information to the person to whom the communication was-made that it would have enabled an ordinary .mechanic,
 
 *603
 
 without the exercise of any ingenuity and special, skill on ■ his part, to construct and put the improvement in successful' operation.
 

 Persons employed, as much as employers, are entitled to their own independent inventions, but where the employer/ has conceived the plan of an invention and is engaged in experiments to perfect it, no suggestions from an employee, not amounting .to a new method or arrangement, which, in itself is a complete invention, is sufficient to deprive the' employer of the exclusive property in the perfected improvement. But where the suggestions go tp make up a complete and perfect machine, embracing the substance of all that is embodied in the patent subsequently issued to the. party to whom the suggestions were made, the patent is invalid, because the real- invention or discovery belonged to another.
 
 *
 

 . Guided by these well-established principles, the first inquiry is, what was actually done by the person who, as alleged by the respondents, was the real inventor of what is described in the reissued letters patent ? They do hot pro- ' tend that he invented .or even suggested the entire invention, nor all of .the several elements embraced in any one of the separate combinations, as expressed in the claims of the patr ent; and if they did, it could not for a moment be sustained, as it finds no support whatever in the evidence. None of' the devices described in the specifications are new, but the/ claims of the patent are for the several combinations of the" described elements arranged in the manner set'forth, and for ■ the purpose of working .out the described results.
 

 Regarded in that light, it is clear that the concession’ that' - the person named did not invent nor suggest the .entire invention, nor any one of the separate combinations, is equivalent to an abandonment of the proposition under consideration, as it is clear to a demonstration that nothing short of that avennent can be a valid defence. Respondents do not
 
 *604
 
 .allege in the answer that the person, named was a joint- inventor with the original patentee, but the allegation is that Ve made the invention, and they deny that the assignor of the complainant ever bestowed any ingenuity .upon what is described in the, letters patent as his improvement. Such a (defence cannot be successful unless it is proved, as common j ustice would forbid that any partial aid rendered under such circumstances, during the progress of experiments in per- - fecting the improvement, should enable the person rendering •the’aid to appropriate to himself the entire result of the intgenuity and. toil of the originator, or put it in, the power of any subsequent infringer to defeat the patent under the plea that the invention was made by the assistant and not; by the originator .of the piad.
 

 The evidence shows that the original patentee was born in 1793, and that he commenced working on machinery in his. youth, while he was with his father, and that, as early as the year 1812, he went into the employment' of certain machinists, residing at Worcester, Massachusetts,-who were engaged in constructing machinery for the, manufacture of wool and cotton. While in the,ir employment, he began experiments in woollen machinery. Thpse experiments were directed tothfe object of improving the billy, for the purpose of drawing. out the carriage more' accurately, and thereby making better work.- Several years were spent in-that- business, but, in 1820, he went to Halifax, in that State, and, while there, he made numerous experiments to get rid of the billy entirely, and to dispense with short rolls, and substitute long-rolls in their place. He remained there three years,, and, during .that time, he was constantly engaged in experiments to accomplish those objects. In the spring of 1823 he moved-to Dedham, in the same State, and there hired a mill, and engaged in the manufacture of broadcloth* and also carried on „ the machine business, and the witness also states that he then prosecuted his experiments on a lq,rge scale.
 

 Cans were used as a receptacle for' the rovings, delivered 'from the doffers,-before the. drawing-off and winding apparatus, described in- the patent, was invented. Rovings, be
 
 *605
 
 fore that invention, were spun from cans, instead of being wound upon, and spun from, spools or bobbius. Considerable importance is attached to the new method, as it was largely by that means that the use of the endless roving was made practical, and that the difficulty produced by the.kinking of the roving, incident to the use of the cans, was overcome.
 

 Theory of the respondents is, that the new method of. accomplishing that function was invented by Edward Wins-low, but their witness, John D. Cooper, only testifies that he made or suggested thb spool and drum, which are not fhe only elements of that apparatus. .JJnaccompanied by the 'traverser, they would, perhaps, be better than.the cans,.but it is clear that the apparatus would be incbmplete without that device, as it is by that means that the bobbins are evenly wound, with the roving.
 

 Testimony of that witness is, that he first suggested to Winslow that the roving must be wound on a spool, elsp they never could make good yarn, and he proceeds to state that they procured, some pasteboard, and that Winslow made a-pattern .for a spool and drum from that material. Explanations, in detail, are given by the witness, of the several steps taken by them in accomplishing the change in the apparatus, and the witness states: that the priginal patentee never saw the spool and drum until he came into the mill and *saw those devices in the machine.. Argument for the respondents is, that the spool and drum were invented by that party while he was in the employment of the original patentee, but the complainant denies the theoi’y of fact involved in the proposition, and insists that the 'statement- of the wit-mess are untrue, and 'that he is not entitled to credit. Further statement of the witness is, that the improvement, as soon as it was perfected, was applied to all the carding and spinning machhies in the mill; and that the mills, so adjusted1 as to embrace that improvement, were put in successful operation during the summer and autumn of that year.
 

 Two answers^are made by the complainant to the defence founded'on- that testimony, both of which are sustain'ed by
 
 *606
 
 the court. . 1. Suppose the testimony of the witness to be all tbue, the Complainant contends that it is not sufficiently com,'prebensive to support the allegations of the answer, ñor even to support the proposition presented in th'e- brief of the respondents. Taken'in the strongest view for the respondents, the testimony merely shows that Winslow,- or the witness Cooper, or both together, after the originator of the plan had ' nearly completed his great and valuable improvement, and while he was still prosecuting his experiments with the'utmost diligence, suggested the spool and drum as substitutes for the cans, and that Winslow actually made those devices, and,«with the aid of witness, put them into one of the "machines as an experiment. When their employer first examined the arrangement, rude as it was, he expressed great'satisfaction with it, but upon se'eing it tried he pronounced it of no. value. Neither of those opinions, however, turned,out'1 to be quite correct, as, upou further trial, when better, adjusted, and by adding the traverser, so that the contrivance would wind the roving evenly on the spool, it proved to be ' a useful auxiliary part of the invention.
 

 Valuable though it was and is, as aiding- in the accomplishment, of the desired result, it is nevertheless' a great error to regard it as the invention described iu the subsequent patent, or as such' a material'part of the same that it confers any right upon the party who made the suggestion to claim to be the inventor, or a joint inventor, of the improvement, or to suppose that the proof of what was done 'by that party .can constitute' any defence, as against the owner of the -patent, to the charge of infringement.
 

 , ¡^Second answer to the defence founded on that testimony is, that the testimony is unreliable, because the witness is not entitled to credit. Hundreds of .pages of the transcript are filled with proof, introduced either to assail or support the credit-of that-witness; but the court is of the opinion that it is not necessary to enter into th.ose details, as the decision must be in favor of the appellee,-even if every word Stated by that witness is taken to be true. Entirely satisfied ■ with our conclusion upon the merits, we are the-less inclined
 
 *607
 
 to* enter into those details, as a full analysis of the proofs within reasonable limits would be impracticable; but it is proper to say that the proofs have been carefully examined, and it is the opinion of the court that the letters patent in this case cannot be held to-be invalid upon such testimony.
 

 ' II. Second defence, .as ¡Stated in argument, is, that the invention, at the time the application for the original patent was .made, had been on «ale and in public use, with the consent and allowance óf the applicant, for more than two years, and that the applicant abandoned the same to the public. Abandonment, as set up in the concluding para-' graph of the proposition, is a distinct defence from that set up in the preceding part of the same proposition, and must be separately considered.
 

 ' Sale and public use, for more than two years prior to the-application for the patent, are not alleged in the answer. What- the respondents do allege is, that the invention, at the time the application for a patent was filed, and. for a long • time before, had been on sale and in public use,, which* without more, is not a good defence against the charge of infringement. On the contrary,-the correct rulé is that no patent shall be held to be invalid on account of such sale and public rise, except on proof that the invention was on sale and in public use more than two years before the application therefor was filed in the-Patent Office.
 
 *
 

 Evidence to show that the invention of the original patentee, as' finally perfected, was on sale and in public use more than two years before he applied for a patent is entirely wanting, and if such -evidence was offered, it could not be admitted under the pleadings, as no such defence is set up in the answer.
 
 †
 

 Undoubtedly an inventor may abane on his invention, and surrender or dedicate it to the public; but mere forbearance to apply for a patent during the progress of experiments,' and until the party has perfected his invention and -tested
 
 *608
 
 ' its- value by actual- practice, affords no just grounds for atiy - such'presumption.
 
 *
 

 Application for a .patent, in this case was probably filed in the Patent Office, before the middle of November, 1826, and ■the proofs are full and satisfactory to the court that the inventor, up to that- time, Was "constantly engaged in'perfecting, his improvements, and ip making the necessary preparations to1 apply for a patent.
 

 III. Third defence is, that the reissued letters- patent,are void, because they were not issued in conformity with the "act of! Congress relating to that subject, 0mission of the original; patentee seasonably to apply for an extension of his patent was occasioned through erroneous information given tb-him by.the commissioner, and not from any negligence or fault of' -his oWn. Acting .upon .information from that •sou-pm, the invfentor did not file his application'until it was too! late to- give the notices as required'by law, and the time for presenting such am application having expired, the commissioner had no power to grant his request.. Deprived of any legal remedy under the general laws for the protection of inventors, he-applied to Congress, and on the thirtieth of May, 1862, Congress passed an act for his relief.
 
 †
 

 By-the terms of that act he was authorized to apply to the commissioner for a renewal and ■ extension -of the- letters patent, previously granted to him for the term of seven years from the time of .such renewal and extension, and the commissioner was empowered-to grant such renewal and exten■sion, 'or. t.o withhold the. same under the then existing laws, i tin the same manner as if'the application therefor had been seasonably made. Annexed to the body of the act is a proviso, that such renewal and extension shall not have the effect of ,he. construed to restrain persons using the invention, at the' time óf such' renewal and extension, from continuing'the use of the same, nor to,subject them to any claim or damage for'having used, such machinery..
 

 
 *609
 
 Objection now taken is, that the said proviso in the act of Congress is not recited in the reissued letters patent; but the objection is entirely without merit, as it appears in the record that the certificate of renewal and extension, as granted by the commissioner, was made subject in express terms to the proviso contained in' that act.
 

 Doubts are entertained whether even that fvas absolutely necessary; but it is'clear that there is nothing in the proviso to warrant the conclusion that the form of the extended patent might not be the same as that in general use, and if is not even suggested that the form of the extended or r? issued patent was in any respect different from the corre spending established forms of the Patent Office.
 

 IY. Fourth defence is, that the respondent’s machi nerj was in use before the patent in this case was granted; bul it is not alleged that their machinery was in use before the extended patent was issued, and, therefore, the allegation affords no defence to the charge of infringement.
 
 *
 

 Other defences are mentioned in the brief of the respon • dents; but none of them were urged in argument, and they must be considered as abandoned.
 

 V. Infringement is an affirmative allegation made by the complainant, and the burden of proving it is upon him, unless it is admitted in the answer. Specific inquiries were made of the respondents in this case, and they did not sab isfaetorily answer those interrogatories. Evasive answers, under such circumstances, if not positively equivalent to admissions, afford strong presumptive evidence against the respondents. Apart from that, however, the answer of the respondents is unsatisfactory in other respects. They do not .in terms deny that they have used, and are using, the invention as alleged; but what they do deny is, that they use any machinery in violation and infringement of any rights of the complainant, or that they are using, or have made, used, or sold any machinery not protected by' the
 
 *610
 
 proviso contained in the. act of Congress passed for the relief of the original patentee.
 

 ■ Clear implication-from the answer is, that, they had made ih'achinery-such as that described in the letters patent, and if so, then they-are clearly liable as infringers, as they were--not incorporated at the date, of the extended patent. Machines made since the patent was extended are not protected ■by-that proviso, as is plain from its language; but the complainant cannot recover damages for any infringement antecedent to the date of the reissued patent, as the' extended patent was surrendered.
 

 Proofs of the complainant .to show infringement consist in a comparison of the máchines made by the respondents with-the mechanism described in the patent, and in the testimony of scientific .experts, and- they are so entirely satisfactory,’that it is not deemed necessary to pursue the investigation.
 

 Decree aeeirmeu
 

 *
 

 5 Stat. at Large, 119, 121.
 

 †
 

 Id. 123, 124.
 

 ‡
 

 Id. 124.
 

 *
 

 Wilton
 
 v.
 
 Railroad, 1 Wallace, Jr., 195.
 

 †
 

 Teese
 
 v.
 
 Huntingdon, 23 Howard, 10.
 

 *
 

 5 Stat. at Large, 123; Reed
 
 v.
 
 Cutter, 1 Story, 599.
 

 †
 

 Pitts
 
 v.
 
 Hall, 2 Blatchford, 229; Union Sugar Refinery
 
 v.
 
 Matthiessen, 2 Fisher, 600.
 

 *
 

 Washburn et al.
 
 v.
 
 Gould, 3 Story, 133.
 

 *
 

 Pitts
 
 v.
 
 Hall, 2 Blatchford, 234; Allen
 
 v.
 
 Rawson, 1 Manning, Granger & Scott, 574; Alden
 
 v.
 
 Dewey, 1 Story, 338; 1 Webster’s Patent Cases, 132, note e.; Curtis on Patents, 3d ed. 99; Reed
 
 v.
 
 Cutter, 1 Story, 599.
 

 *
 

 5 Stat at Large, 354; McClurg
 
 v.
 
 Kingsland, 1 Howard, 209; Stimpson v. Railroad, 4 Id. 380.
 

 †
 

 Foster v. Goddard, 1 Black, 518
 

 *
 

 Kendall et al. v. Winsor, 21 Howard, 322; Pennock et al.
 
 v.
 
 Dialogue, 2 Peters, 1.
 

 †
 

 12 Stat. at Large, 904
 

 *
 

 Stimpson
 
 v.
 
 Railroad, 4 Howard, 380.