## NAT. FEATHER DUSTER CO. *v.* HIBBARD.

(*Circuit Court, N. D. Illinois.* November 26, 1881.)

**1. LETTERS PATENT — FEATHER DUSTERS — REV. ST. § 4918 — INTERFERING PATENTS.**

Letters patent No. 177,933, dated May 30, 1876, and issued to Susan M. Hibbard, for an improvement in feather dusters, *held* to interfere with letters patent No. 154,985, and set aside.

**2. ESTOPPEL.**

Under the circumstances, Susan M. Hibbard is estopped to deny that her husband was the inventor of the device in controversy.

**3. INVENTOR.**

One who made a valuable suggestion to the conceiver of the idea of substituting, in a feather duster, feathers of the common domestic fowls in place of ostrich feathers, while he was engaged in a series of experiments with a view to discover some means whereby such feathers might be made pliable, did not, thereby, become the inventor of the duster.

*Sleeper & Whiton*, for complainant.

*West & Bond*, for defendant.

BLODGETT, D. J. This is a bill in equity, framed under section 4918 of the Revised Statutes of the United States, for the purpose of setting aside and declaring void a patent issued by the United States to Susan M. Hibbard, for "an improvement in feather dusters," dated May 30, 1876, and numbered 177,933, upon the ground that the patentee, Susan M. Hibbard, was not the inventor of the device described in and covered by the patent.

The complainant claims to be the owner of patent No. 154,985, issued by the United States, on the fifteenth of September, 1874, to

William H. Curwin, Charles J. Sauter, and William W. Clark, as assignees of George W. Hibbard, for an "improvement in feather dusters," and charges that George W. Hibbard is the husband of the defendant Susan M. Hibbard, and that after the said George had made the invention described in the letters patent No. 154,985, and before the issue of his patent, he sold and assigned his invention, and his right to a patent thereto, to the parties named therein, to-wit, Curwin, Sauter, and Clark, and the patent was duly issued to them as assignees of George W. Hibbard; and that after said George W. had made the invention described in his patent, and sold the same, as stated, he and the said Susan M., his wife, colluded together to obtain the letters patent which were issued to said Susan upon the pretext and false assumption that said Susan was the real inventor of the device covered by the first-issued letters patent. And the bill prays that the patent so issued to said Susan M., in violation of the exclusive rights of the complainants in the invention therein described, may be cancelled and set aside.

The peculiar feature which characterizes both these patents is a feather duster made of turkey feathers, or the feathers of our ordinary domestic fowls adapted to such purpose, made pliable by removing the pithy part or body from the stem of the feathers, so as to adapt the feathers more perfectly to such use, when combined with the other elements to form a duster or brush.

The proof in this case shows conclusively that Mrs. Susan M. Hibbard knew of the fact that her husband had applied for a patent upon this device; knew, also, that he was poor and unable to pay the expense of obtaining a patent, and that he made the bargain with Curwin and Sauter to advance the expenses and obtain the patent on condition that they should become half-owners thereof. She also knew of the negotiations between her husband and Clark for the sale of the other half of the patent, and made no objection to the negotiation, and knew that her husband was to receive what was considered very liberal pay for the remaining half of the patent, and the only objection she ever made to the negotiation was that she insisted that the purchase money to be paid by Clark should be given to her—not because she was the inventor, or had anything to do with the invention of the duster to be covered by the patent, but because her husband, being an improvident man, would squander the money which she wished to use in the purchase of a home for the family. During all the negotiations between her husband and Curwin and Sauter, and her husband and Clark, she never claimed or pretended, or by

any conduct on her part insinuated, that the invention was in any degree her own, but allowed these men to invest their money in the procurement of the patent, and Clark pay for the unsold half of the patent, upon the understanding—to which she seems to have been as fully a party as her husband—that he was the inventor of the duster to be covered by the patent. It seems to me that the proof shows that Mrs. Hibbard, in allowing her husband to deal with Curwin, Sauter, and Clark as the original and first inventor of this device, has so far conceded or admitted him to be the original inventor thereof as that she should be estopped from now claiming otherwise, and especially claiming that she, and not her husband, was the inventor. If there were no other features in the case, therefore, than the conduct of Mrs. Hibbard towards the persons with whom her husband dealt, I should think it enough to cancel this patent as against the patent previously issued to him.

But the case is, perhaps, susceptible of solution upon another ground. It appears from the proof that George W. Hibbard, for some time prior to the alleged invention described in his patent, had been engaged in the manufacture of dusters from turkey feathers, by setting them in their natural condition into a handle so as to make a brush or duster; that some little time prior to the tenth of February, 1874, he conceived the idea of making a better duster by softening the stems of turkey feathers and rendering them more pliable, so as to make a feather duster which would supersede or take the place of dusters then and theretofore made from ostrich feathers,—his idea being that, if he could make turkey feathers, or the feathers of our common fowls, pliable, he could use them in place of foreign feathers, and make as good, if not a better, duster. He experimented some time in this direction, with chemicals, for the purpose of softening the stem or rib of these feathers, and not succeeding to his satisfaction in any of these experiments, was discussing the subject on one occasion with his wife, when she suggested to try cutting or shaving down the stem of the feathers, so as to make them pliable and limber. The suggestion was at once acted upon, and a duster made which proved satisfactory, and the patent issued to his assignees was obtained for this device as the invention of George W. Hibbard.

Mrs. Hibbard's sole claim to the invention covered by her patent, which is the same as that covered by the patent of her husband, is that the suggestion or idea of cutting or trimming these feathers down, so as to make them limber, first came from her, and upon this fact she claimed and obtained the patent in controversy.

The specifications and claims in the two patents are substantially the same, and are for, "as an improved article of manufacture, a feather duster having the stems of the feathers split longitudinally, and a part thereof severed from the remaining part, substantially as specified."

The patent, it will be seen, is for this new article of manufacture, namely, a feather duster made of split feathers. It is not upon split feathers as such, or upon the process of splitting feathers, but upon a combination of the split feathers with the other elements by which a duster is made. The idea of a feather duster, to be made of feathers of the common turkey or other domestic fowls, seems clearly to have originated with George W. Hibbard. The *desideratum* was to make those feathers pliable. He was seeking to accomplish this when the suggestion was made to him by Mrs. Hibbard to try cutting or splitting them. The proof on the part of Mrs. Hibbard fails to show, indeed it falls far short of showing, that she ever made a feather duster, or thought of making one, from turkey feathers made pliable by splitting them, until after her husband had been for some time at work in that direction. The most the proof does show is that she suggested the mode of making feathers limber and pliable which were used for the purpose of making the feather dusters described in this patent. The successful feather duster, covered by both these patents, was, it seems to me from the proof, the invention of George W. Hibbard. While he was experimenting—I may say, perhaps, groping—for some method of rendering his feathers pliable, Mrs. Hibbard suggested the experiment of splitting the feathers. He acted upon that suggestion, and finding that the feathers were thereby made pliable, combined them with the other material, and made the feather duster which, before that time, had only had existence in his mind. Although Mrs. Hibbard may have made a valuable suggestion in the progress of the experiment, yet that does not make her the inventor. *Agawam Co.* v. *Jordan,* 7 Wall. 602; *Pitts* v. *Hall,* 2 Blatchf. 229.

For these reasons, but mainly upon the ground of the estoppel, which I think the most cogent, the bill of the complainant will be sustained, and a decree entered setting aside the patent issued to Susan M. Hibbard.