Mr. Justice Morris
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioner of Patents in an interference case.
The subject-matter of controversy, an improvement in the construction of iron bedsteads, was before us in a former interference case, Foster v. Antisdel, 14 App. D. C. 552, between the appellee here, Egbert M. Antisdel, and another claimant, Oscar S. Poster, wherein judgment of priority of invention was awarded to Antisdel in affirmance of the decisions of all the tribunals of the Patent Office. In the course of the taking of the testimony in that case the present appellant, Julius D. Lloyd, was a witness for Antisdel against Poster, and there was a suggestion by him that he (Lloyd), and not Antisdel, was the real inventor of the matter in issue. In the argument before us Poster seemed to rely less upon his own supposed claim of priority, which was practically abandoned by him, than on the assumed disproval of Antisdel’s claim by the testimony of his own witness to the effect that he, the witness, and not Antisdel was the true inventor. We, however, held that Lloyd’s claim was not before us, and that in that interference *492 we could only consider the rival claims of Foster and Antisdel.
But it seems that, while that case was in progress and long before it came before us for determination, Foster, acting upon the suggestion in Lloyd’s testimony, entered into negotiations with him, induced him to set up a claim to the invention, and purchased the claim for himself or or for his firm. Accordingly the present application is prosecuted in his interest, although necessarily in the name of Lloyd as claimant.
The interference between Foster and Antisdel contained only one count, which was expressed in the following terms:
“The combination of a round post having a headed projection and a bed frame or rail fixtures having a grooved face to receive the post, a groove to receive the head projection, and having inclined grooves in its oppositely disposed parts adapted to receive the head of the projection.”
Foster’s claim to this invention was limited to the date of his application for a patent, which was January 20, 1896. Antisdel proved previous conception by him and actual reduction to practice in November, 1895, and was therefore awarded judgment of priority. The present interference comprises eight counts, of which the first-and principal one is identical with the one count in the Foster-Antisdel interference, and the other seven seem to be merely modifications of the principal count. They are as follows:
“1. The combination of around post having a headed projection and a bed frame or rail fixture having a grooved face to receive the post, a groove to receive the headed projection and having inclined grooves in its oppositely disposed parts adapted to receive the head of the projection.
“2. The combination of around post having a headed projection and a rail or frame fastener grooved to fit the side of the post, and having recesses to receive the post projection, and two sets of inclined shoulders adapted to engage *493 the head of the post projection, inclining in the same direction, and adapted to engage the post at two different elevations.
“ 3. The combination of a post having a headed projection, and a rail or frame fastener having a groove to receive the post, and a recess to receive the headed projection, and a shoulder on each side -of the recess adapted to engage the head of the projection.
“4. The combination of a bedpost having a headed projection, a rail or frame fixture having wedging portions and portions abutting on the post above and below said wedged portions.
“5. The'combination with a bedpost having a headed projection of a rail or frame fixture having a grooved face adapted to receive the side of the post, and a groove to receive the headed projection and two sets of wedging projections.
“ 6. In a bedstead of the character described the combination of a post having a projected headed pin and a longitudinally recessed coupling formed to receive and partially embrace the leg and oppositely inclined or wedge shaped faces within the coupling between which the neck of said pin passes and which engage the head of the pin.
“7. In a bedstead the combination of a leg having a projected headed pin and a longitudinally recessed coupling to receive the leg and engaging the, same’above and below the pin and provided with internal oppositely disposed wedge shaped faces engaging the pin and drawing the coupling and bed together by means of the wedge action.
“8. In a bedstead the combination of a post having a headed projection, a longitudinally recessed coupling receiving and partially embracing the post and provided with oppositely disposed internal wedge or inclined faces receiving said headed projection and drawing the post and coupling together, the coupling engaging the post on opposite sides of and above and below the projection and wedging faces.”
*494 Antisdel’s application for a patent was filed on January 23, 1897 ; and Ms application was in interference with, that of Foster and testimony was being taken in the cause, when, on September 15, 1897, the application of Lloyd was filed, with full knowledge of Antisdel’s case. The burden of proof, therefore, is quite strongly on Lloyd; and all the tribunals of the Patent Office have held that he has not satisfactorily sustained it, and have awarded judgment of priority to_Antisdel. On behalf of the assignees of Lloyd, who died during the pendency of the cause in the Patent Office, appeal has been taken to this court.
Most of the testimony in the cause consists of transcripts from the record in the cause of Foster v. Antisdel, which, by agreement of the parties and by order of the Commissioner of Patents, was authorized to be used in this case. There were, however, some other depositions added. All the testimony is rather remarkable for indefiniteness and obscurity; but there are some salient facts which are sufficiently established, and which will serve as a basis for the determination of the controversy.
Antisdel was the superintendent of the Comstock Manufacturing Company, of Utica, in the State of New York, which was engaged in the manufacture and sale of iron bedsteads; and as such he was greatly interested in the improvement of bedstead-fasteners. The Foster Brothers Manufacturing Compány, of which Oscar S. Foster, the opponent of Antisdel in the former interference, seems to have been the principal member, was a rival in the same business. And Lloyd, the present applicant and appellant, was a patternmaker in the employ of the Oriskany Malleable Iron Company, of Oriskany, in the same State, who was engaged for his company in making patterns and castings for both Antisdel and Foster, or their two companies. On or about August I, 1895, Antisdel brought to the foundry of the Oriskany Company a wooden model of a device for connecting the rail and post of an iron bedstead for the *495 purpose of having a casting made of it, and he was referred to Lloyd as the patternmaker. Some conversation ensued between Lloyd and Antisdel in which Lloyd pointed out some faults, as he considered them, in the model. Antisdel went away, but returned in about half an hour, and in the interview then had between himself and Lloyd the latter suggested the introduction of a headed rivet into the model. To this suggestion Antisdel acceded, and at the request of Lloyd subsequently brought to the latter a section of pipe, such as is used in beds, with a headed rivet attached, from which Lloyd made the model from which the castings were made which were subsequently used in a bedstead sold in November, of 1895, by Antisdel or his company, and which was mentioned in the decision of the case of Foster v. Antisdel, 14 App. D. C. 552, as Antisdel’s reduction of the invention to practice.
Thus far there would seem to be no conflict in the testimony of the parties. Antisdel concedes that the feature of the headed rivet was Lloyd’s suggestion. But the headed rivet is only one element of the invention; it is not the matter in issue; the controversy is over the invention as a whole, the combination stated in the claims. Lloyd claims this combination; but he has not proved his title to it by any satisfactory testimony. He does not show that he suggested or invented anything in the combination except the headed rivet, and that is conceded to him. There is no testimony whatever on his part that he ever invented anything else in the combination. From the suggestions of Antisdel and from the materials furnished by him, he may have made a newer and better model than was Antisdel’s; but that does not constitute invention. To his action may well be applied the principle of the case of the Agawam Co. v. Jordan, 7 Wall. 583, wherein it was said:
“ Where a person has discovered an improved principle in a machine, manufacture, or composition of matter, and employs other persons to assist him in carrying out that *496 principle, and they, in the course of experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the property of'the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention.” See, also, the case of Milton v. Kingsley, 7 App. D. C. 531, and Curtis on Patents, Secs. 120, 123.
The testimony mainly relied upon on behalf of the appellant is that of three witnesses, who may be presumed to be disinterested, to the effect that Antisdel admitted on more than one occasion, in speaking of the claim of Foster, that the invention was that of Lloyd, if of anyone. But in the testimony of no one of these witnesses is it shown, or in any manner intimated, what the invention was which was so admitted to have been Lloyd’s.; and as Lloyd himself specifies only the headed rivet, and as Antisdel admits this headed rivet to have been Lloyd’s suggestion, we find no reason to assume that Antisdel’s admission extended beyond this single feature of the issue.
On the other hand, in May of 1897, after Antisdel’s application for a patent had been pending for over three months in the Patent Office, and when he was seeking to be placed in interference with Foster, and to show that he had been manufacturing the device in question, and had therefore reduced it to practice before Foster, he procured from Lloyd an affidavit which tended to show such reduction to practice by Antisdel. It is true that Lloyd states that he did not know that there was an interference proceeding pending, but only that Antisdel had some controversy with Foster, when he made his affidavit. But the affidavit specifically refers to the device in controversy; and it was then and there the duty of Lloyd, if he then believed himself to be the inventor and intended to assert his right to it, so to assert his right at that time, and to take immediate *497 steps for his own protection. He did nothing of the kind, and he did nothing whatever, so far as the record discloses, until the month of September, 1897, when, during the taking of his testimony as a witness on behalf of Antisdel in the case of Foster v. Antisdel, he for the first time announced that the invention was his own. During an intermission in the taking of that testimony he entered into the negotiations with Foster which resulted in the immediate execution of the application for a patent now pending. So from August, 1895, when he claims to have made the invention, until September, 1897, when he first announced his claim to it, a period of more than two years, during nearly the whole of which the device had been manufactured and sold by Antisdel and his company, he was wholly silent, notwithstanding that he was fully aware of the controversy between Foster and Antisdel. This course of inaction is not in accordance with the ordinary rules that govern human conduct.
We deem it unnecessary to analyze the testimony more at length. This has been sufficiently done by the tribunals of the Patent Office; and we áre entirely satisfied that the conclusion reached by them is correct.
As remarked by the Commissioner, the case is not so much a contest for priority, but one of originality. The reduction to practice by both parties is one and the same; and the only question for determination is that of conception. We are satisfied, as was the Commissioner, that the invention was that of Antisdel.
The decision of the Commissioner, awarding judgment of priority of invention to Antisdel, is affirmed.
The clerk of this court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents according to law.