# LARKIN v. RICHARDSON.

---

PATENTS; INTERFERENCE; EMPLOYER AND EMPLOYEE; BURDEN OF PROOF.

1. Where a party has discovered an improved principle in a manufacture, and employs another to assist him in carrying out that principle, and the employee makes valuable additions to the preconceived design of the employer, such improvements are, in general, to be regarded as the property of the employer, and may be embodied in his patent as part of his invention. (Following *Milton* v. *Kingsley*, 7 App. D. C. 537, and *Gedge* v. *Cromwell*, 19 App. D. C. 198, and citing *Gallagher* v. *Hastings*, 21 App. D. C. 91.)

2. Where, in an interference case involving the invention of a display can with two openings, with removable plates, the real parties to

which are a biscuit company, the assignee of the senior party, and a can company, the assignee of the junior party, it appears that the senior party, who was the advertising manager of the biscuit company, had drawings made, some of which showed such a can, which was a modification of a can then in use; which drawings were turned over to the can company, and the latter thereupon caused cans to be made for the biscuit company by its employee, the junior party, such cans having certain means of fastening not disclosed by the drawings; and that thereafter, the can company having failed to procure a long-term contract with the biscuit company for the manufacture of the new cans, the junior party applied for a patent,—a heavy burden is on the junior party to show that what he did was his independent invention; and if the testimony fails to so show, the senior party is entitled to an award of priority.

No. 361.   Patent Appeals.   Submitted November 14, 1906.   Decided December 7, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. H. N. Low, Mr. John W. Munday,* and *Mr. Edmund Adcock* for the appellant.

*Mr. Charles K. Offield, Mr. Charles C. Linthicum,* and *Mr. Earl D. Babst* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

Bernard H. Larkin appealed from a decision of the Commissioner of Patents that John D. Richardson is the prior inventor of certain improvements in the construction of sheet-metal display cans for bakery products. Richardson is the advertising manager of the National Biscuit Company, to which he assigned his application.   Larkin was, at the time to which this interference relates, a district manager of the western factories of the American Can Company, to which company his application was assigned.   At the time the testimony was taken he was no

longer in the employment of this assignee. The issues of the interference are as follows:

"1. A receptacle of the class described, consisting of a sheet-metal can having a cover, and its front wall provided with oblong panel-like openings, the margins of the sheet-metal surrounding said panel openings being inturned, and sheets of material removably secured behind said openings, the upper sheet constituting a name-plate and the lower being transparent to display the contents in the bottom of said receptacle and held against the inturned margin of the metal surrounding the lower panel, substantially as described.

"2. A receptacle of the class described, comprising a sheet-metal can having its front plate or side provided with two oblong panel openings of substantially equal size and extending substantially across the front of the can, a name-plate fitted behind the upper panel opening, the margins of the sheet along the lower panel opening being inturned to provide a narrow ledge or bearing, and a sheet of glass removably secured behind the lower panel opening in contact with said ledge, substantially as described.

. "3. A sheet-metal display can or box, comprising in combination a body having three sheet-metal sides, furnished at their upper ends with hollow, triangular strengthening bars or braces, and provided with a hollow triangular strengthening bar or brace at its front, and a sheet-metal front plate having an upper or sign opening therein, and provided with sheet-metal guides. having horizontal and upright flanges soldered to said front. plate to form a pocket thereon to receive a removable sign plate, said front strengthening bar and said front plate forming a slot between them for removal and insertion of the sign plate, substantially as specified.

"4. A sheet-metal display can or box, comprising in combination a bottom, a body, and a hinged cover, the front of the body having two openings therein, two removable plates for closing said openings, fixed guides for holding one of said plates in place, and fastening means for holding the other removable plate in place, substantially as specified.

"5. A sheet-metal display can or box having a bottom, a body, and a cover, the sheet metal front of said body having two openings therein, two removable plates for closing said openings, guides for holding one of said plates in place, and a turn button guide for holding the other plate in place, substantially as specified.

"6. A sheet-metal display can or box having a bottom, a body, and a cover, the sheet-metal front of said body having two openings therein, two removable plates for closing said openings, guides for holding one of said plates in place, a turn button guide for holding the other plate in place, said turn button guide being mounted on one of the guides for said first-mentioned plate, substantially as specified."

The Patent Office tribunals have determined that the subject-matter of this interference is invention. Counsel for Larkin claim that such invention, broadly stated, is a combination of six features, which are the front plate of the display can, an additional opening at the upper part of the brass front plate, a removable sign plate, fixed guides of triangular pieces secured on the inside of the front plate for holding the removable sign plate in place behind the upper opening, a removable glass plate behind the lower opening in the front plate. Counsel for Richardson say the gist of the invention consists in the can having two front openings with two removable plates applied thereto, one to display the goods and the other the name of the National Biscuit Company, whose cans of the older style were provided with a single opening covered by a large removable sheet of glass which displayed the contents of the can, but which large opening was more expensive, more fragile, and also greatly weakened the can front. The Board of Examiners-in-Chief, which awarded priority to Larkin, took the former view, while the Examiner of Interferences and the Commissioner of Patents inclined to the latter view, and these awarded priority to Richardson, who was, in the opinion of the Commissioner, "the inventor of the broad idea of the can with the two openings, with removable panels."

In his preliminary statement, Larkin alleged conception,

disclosure, and drawings on June 15, 1902; and reduction to practice about June 20, 1902; while Richardson alleged conception and disclosure in May, 1902, drawings, June 1, 1902, and reduction to practice on the 1st day of July, following. Richardson filed his application on November 1, 1902, and Larkin filed his application January 14, 1904. Each party here claims to have originated the idea in the display can, and we must determine which. of the two suggested the material improvements in the can which constitute the invention.

The officers of the National Biscuit Company wanted a can wherein to pack its various bakery products, that should be distinctive in appearance, and thus easily identified with its products, and so pleasing as to be acceptable to its customers. Early in 1902 officials of the National Biscuit Company considered a new style of display can for their goods. They were dissatisfied with the old can, which had one large opening in the front covered by a glass plate, removably fitted. Above this opening the name of the company appeared in embossed letters. Richardson, at the head of the advertising department, actively engaged in the search for a new can, and about the 1st of May, 1902, he says he had in his own mind completed the can, and about the 6th of May he spoke about it to Fraser, and described to him the can. Fraser, a draftsman, was Richardson's chief clerk and assistant, who undertook, after his return from a trip to New York, to produce for Richardson working drawings. Richardson's instructions to Fraser were to make drawings for cans with two openings, showing the openings in various proportions. Fraser consulted with Richardson from time to time while the drawings were in progress, and worked them out to meet his approval, and about June 2 Fraser submitted the drawings, which were satisfactory to Richardson, and Richardson directed Fraser to have such cans made at once. Fraser reported to Richardson that he had placed the order with the American Can Company, and had turned over to Wells, the sales agent of that company, these sketches, and instructed him to send cans so constructed to Richardson's office as soon as possible. Fraser testifies that he returned to Chicago

June 2, 1902, and made about eight drawings of the can, and he produced from memory four drawings, which he said were essentially the same. It is difficult to excavate the actual statements of Fraser, buried, as they are, under the long leading questions of counsel examining the witness, and too often testifying for him. Enough, however, is found to show that Fraser in the presence of Barnard, an officer of the biscuit company, in its purchasing department, gave to Wells, the sales agent of the can company, the original eight drawings about June 16th, or 17th, 1902. Wells suggested to Fraser that he should visit the factory, and then gave Fraser a letter of introduction to Larkin, which is dated June 17, 1902. Fraser had his interview with Wells in the purchasing department of the biscuit company, and Fraser wrapped up the drawings, and Wells took them away with him. Later, by telephone, Fraser talked with Wells about the delivery of the sample cans. Wells, however, died before the taking of the testimony. Fraser identified the can with two openings shown him as one similar in construction and appearance to the cans made by the can company after his working drawings. Fraser fixes the date of his drawings by another circumstance. Before he talked to Wells, by a letter in evidence to the Burdick Sign Company, dated June 14, 1902, Fraser had ordered four sample enameled signs, 10 inches in length, which Richardson's counsel claim was the inside length dimension of the standard size made by the can company after Fraser deliver his drawings to Wells.

Fraser says when he gave the drawings to Wells, the explanation and directions given at the same time were given by Fraser alone. Barnard, who was present, says that prior to this interview Fraser had brought to him a number of sketches for sample cans, and that because Barnard received from Wells his letter presenting Fraser to Larkin, which letter Barnard sent to Fraser, Barnard can swear positively that the interview between Wells and Fraser was either on June 17th or a day or two before. Barnard's testimony in chief is practically the answer "yes" to very long, leading questions of Richardson's counsel. It seems just to say, from Barnard's answers upon cross-exami-

nation, that he substantially confirms Fraser. Barnard now says he saw Fraser's drawings but once, on the occasion when Fraser gave them to Wells, and the eight drawings shown him seemed to be the same drawings that Fraser gave to Wells. Barnard remembers that Fraser told Wells that he wanted him to make the cans in accordance with the drawings of Fraser, and Barnard thinks it was two or three weeks after this interview that the first sample display can, having two openings in its front, one containing a sign plate and one a glass plate, was delivered by the can company to the biscuit company. Evans, an officer of the biscuit company, says that just prior to August 1, 1902, he was, with others, in a conference in Richardson's office, when they selected a can which was Richardson's original can, containing two openings. He identified this can by his own marks thereon, and he fixes the time of the conference because on August 1, 1902, he gave an order for 3,000 of these cans to be shipped to Kansas City. In frequent subsequent talks with Wells and Maas, they always referred to this can as the biscuit company's can, and the witness produced a circular sent to the managers of various bakery plants, dated September 4, 1902, in which Evans notified them that the new can, to be known as "501 can," had been adopted for general use. The circular recites the important features of the can described in this issue. Maas testifies that he brought the drawings from Barnard to Wells, and Wells sent them to the Maywood factory, where Larkin was employed by the can company. Maas only remembers one drawing having two openings, the one for the biscuit company's name at the top, and the other covered by glass to display goods. It was Maas who at Wells's instance delivered to Barnard of the biscuit company the can actually made by the can company in accordance with this drawing, and Maas thinks this occurred about a week after he had given the sample drawing to Wells, and the Richardson exhibit can, is to Maas's best knowledge, the first sample can. Upon cross-examination Maas testified that none of the eight drawings shown to him was the drawing he delivered to Wells. But Maas remembered the drawing marked "B," and finally said that he

had seen these drawings in Mr. Wells's office, to which they had been sent from the can company's factory.

On March 30, 1903, Evans for the biscuit company wrote to the can company to stamp on the backs of all the "501 cans" the words "patent applied for." Whether the cans thereafter were so marked is disputed. It is undisputed that the can company made no objection to the request.

Richardson has the burden of proving beyond a reasonable doubt that he was the original inventor of the subject-matter in controversy. Where a person has discovered an improved principle in a manufacture, and employs others in assisting him to carry out that principle, and those in that employment make valuable additions to the preconceived design of the employer, such suggested improvements are, in general, to be regarded as the property of the party who discovered the original improved principle, and may be embodied in his patent as part of his invention. See *Agawam Woolen Co.* v. *Jordan,* 7 Wall. 583, 602, 19 L. ed. 177, 181; *Gedge* v. *Cromwell,* 19 App. D. C. 198; *Milton* v. *Kingsley,* 7 App. D. C. 537.

Whatever weight be given to the argument that the issues contain specific limitations which Richardson did not disclose, Fraser makes clear Richardson's disclosure to him of a two-opening can with the removable plates, and that several of the drawings he gave to Wells disclose such a can, and that the American Can Company made such a can for the biscuit company, and the Commissioner says that such can with two openings, with plates to be removably secured behind the opening, constitute the main and predominating structural features of this invention. The details of the fastening means, if they call for anything more than the skill of a mechanic, are merely ancillary features suggested by the general plan, and, according to the cases last cited, in the absence of specific proof that they were suggested by Richardson, are to be regarded as part of his invention. The circumstances we have mentioned and the testimony to which we have adverted not only overcome the burden upon Richardson, but create a strong presumption that, in trying to satisfy the desire of his company for a new design for a dis-

play can, Richardson became the real inventor, and that Larkin, the employee of the can company, called upon to make the can Richardson desired, made his present claim after the can company had failed to procure a long-term contract, such as it desired, for the manufacture of the new cans.

Larkin is the junior party, who filed more than one year after Richardson had filed, about a year and a half after the can company began to furnish the new can to the biscuit company, and about nine months after Evans, for the biscuit company, directed the can company to stamp on the can the words "patent applied for." The burden of proof upon the junior party, and the still heavier burden upon one employed to carry out the ideas of another, if he would claim originality in the thing produced, must be remembered, even though Larkin's testimony may show that he added specific elements in completing the sample cans. Much must appear in Larkin's behalf if his reduction to practice in this case is not to be deemed a reduction to practice on the part of Richardson which should enure to Richardson's benefit as the person who proposed and outline the invention. Under all the circumstances, Larkin's reduction to practice appears to be the result of Richardson's communication to Larkin's employer. If so, Larkin must prove beyond a reasonable doubt that what he did was his independent invention. Richardson's disclosure was not as ample as it might have been, but several of the drawings made by Fraser, and delivered through Wells to the can company and to Larkin, suffice to make out a sufficient disclosure on his part. Larkin's disclosure was not complete. The drawings sent to his company through Fraser and Wells impute notice to Larkin of what they disclose. The letter of Wells to Fraser shows he intended Larkin to have these drawings, and Larkin admits that Wells told him the biscuit company wanted to change the style of their packages, though Larkin said they wanted to leave off embossed lettering and lithograph instead, and that Larkin suggested another opening for the lettering, to be removable and held by cleats on the inside of the front. Branninger made the first can under his in-

struction, and Larkin had the first sheet-metal can embodying the invention made about June 27, 1902.

Larkin says the only suggestion he had from Wells was that the biscuit company wanted a lithographed front instead of the embossed front, and that, after he had conceived this invention and had constructed a sample can, he told Wells there should be a patent applied for, and Wells promised to attend to it. It was stipulated that five workmen would testify that they each saw a can constructed like the Larkin exhibit can, which embodies the issues, on the dates named by him, and that they constructed cans like the exhibit can, and other cans like the patterns described by Larkin. It was also agreed that three officers of the can company would testify that they had never seen the eight drawings lettered A, B, C, D, E, F, G, H, until a search for them was made after Fraser testified he had delivered them to Wells; nor could they, after full inquiry, find any employee of theirs who had seen Fraser's drawings; and that Wells would naturally have shown these drawings to these witnesses if to anyone; that the display can in controversy was commonly called the biscuit company's can because it was their custom to name a can as that of the particular customer for whom it was made, and such designation was a matter of convenience and in no manner signified the designer of each particular can. After Fraser had testified concerning his drawings for Richardson, Larkin testified that these lettered drawings were sent to him from Wells just before July 14, and thereupon he had his workmen make cans with the single opening on July 14, the date being fixed by the memoranda of his workmen; and between June 30, and July 18 his workmen made eight cans with two openings, in each instance differing somewhat in size; that he had never seen or heard of the drawing referred to by Maas, nor did he know that the lettered drawings were in the possession of the can company. It is conceded that the five workmen would testify that they for the first time saw these eight drawings shortly before July 14, and then proceeded to make the display cans as Larkin stated, and they were sent to the biscuit company, and

after a search these drawings were found in the main work factory on January 30, 1905. It was about June 7, 1902, that Larkin claims the conception of the invention, and on that day the first display can was made, and this was the reduction to practice claimed by both parties. Branninger made this can under instructions from his foreman, Xavier, and from Larkin. Six patterns for the front of the can, between June 30, and July 15, were in evidence as Larkin's patterns, and it was testified that the seventh pattern, representing the style accepted by the biscuit company, was delivered to the machinery department of the can company as a guide in making dies used in producing cans like the accepted sample.

Under all the circumstances we are convinced that the lettered drawings were sent to the can company near about the time Fraser gave them to Wells for that purpose, and written and oral evidence convince us that Larkin received them before he made the sample can which contains the two openings clearly shown in the drawings lettered A and B. For whilst the four drawings produced by Fraser from memory have two openings, and Fraser was mistaken in saying that all of the eight original drawings showed two openings; the two drawings "A" and "B" of the series of eight do contain two openings, and Richardson says these two are in accordance with his instructions to Fraser, and he believes they are the original drawings; and that Fraser did show him additional drawings with single openings, which did not embody Richardson's idea. Richardson urged and Fraser urged speedy delivery of the sample can, and Fraser by telephone, after he had given Wells the drawings, talked with Wells concerning the time of delivery. We are convinced Larkin is mistaken as to the time he received the patterns from Wells. We believe when Wells directed Larkin to construct the cans desired by the biscuit company, that Wells gave or sent to Larkin the drawings showing the style of can Richardson asked for. Not only do the circumstances impute notice to the can company and Larkin, but these circumstances and the related evidence justify the inference that early in June Larkin actually received the drawings and verbal instructions from

Wells, now dead, relating thereto. There is not a scintilla of evidence to support Larkin's recollection that Wells told him that the biscuit company only wanted lithographed lettering on the can front.

We cannot agree with counsel for Larkin that the testimony that Larkin's exhibit can produced about the middle of July, 1902, with the particular size and proportion, is very significant, since the earlier sample can made for Richardson embodied the main elements of the issue; size and shape of the opening are only details. We will not discuss the Smith patent glass holder, the invention of an employee of the biscuit company, as an explanation of the silence of the can company when asked to mark the cans "patent applied for." It suffices to say it does not appear that any employee of the can company had knowledge of Smith's existence or of his application for this patent. The actual existence of this application, at the time unknown to the can company, is not a good reason for its silence when requested to mark the cans made for the biscuit company "patent applied for." It was then the can company should have protested if it believed that the tin package was the invention of their employee Larkin. The details of the fastening means which the Commissioner regards as the skill of the mechanic, or merely ancillary features, were not suggested by Larkin to Branninger, who made the first can. Inasmuch as Richardson was the inventor of the idea of the can with the two openings with removable panels, and by his draftsman instructed the can company to make them, we need not further discuss the lesser details in the can produced. We think this case is well characterized in *Gallagher* v. *Hastings,* 21 App. D. C. 91. There Justice Shepard said: "These were not independent inventors, working out the same conception separately and unknown to each other, but each claims the conception and reduction to practice, of a construction that was set on foot by one to meet a novel condition, and was manufactured by the other."

The decision of the Commissioner of Patents is affirmed, and this opinion will be certified to him in accordance with the statute. *Affirmed.*