# FUNK *v.* HAINES AND MATTESON.

---

PATENTS; INTERFERENCE; SENIOR APPLICANT; JUNIOR APPLICANT; BURDEN OF PROOF; PRIORITY OF INVENTION.

1. The party first applying for a patent has *prima facie* the priority of right, and the *onus* of proof is upon any junior applicant ·to show not only priority of invention but also reasonable diligence in adapting and perfecting his invention and in the reduction thereof to practice.

2. The party first perfecting a machine is entitled to a patent therefor, regardless of the fact that others may have previously had the same idea and made experiments towards putting it into practice; provided, however, that if the latter be using reasonable diligence in perfecting the machine, the prior reduction to practice by the junior inventor will not deprive the senior inventor of his right to the patent.

3. A machine, in order to have reached the condition of a patentable invention, must have been reduced to substantial form demonstrating at once both its practical efficiency and its utility.

4. In the production of proof in an interference case parties must be held strictly to the dates set forth in their preliminary statements.

5. When it appears from the evidence in an interference case that the junior applicant for a patent had never made or operated any machine containing the invention in issue; that the only step towards making or completing the invention was the drawing of a pencil sketch and the causing of other pencil sketches to be made, and the delivery of the same to a third party; and that there was no evidence, other than the testimony of the junior applicant himself that he had ever had any possession of the invention prior to the date of the senior applicant's petition for a patent; and that assuming the truth of the junior applicant's statements as to time of conception of the invention, there is still a great and unexplained delay in attempting to complete and reduce the invention to practical operation — which delay gives rise to a strong presumption against the statement; the junior applicant has failed to produce that clear and indubitable proof which he is called upon to show in order to overcome the presumption of seniority of patent which arises in favor of the senior applicant.

No. 195. Patent Appeals. Submitted May 13, 1902. Decided June 23, 1902.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Munn & Co., Mr. Perry B. Turpin,* and *Mr. H. S. Blandford* for the appellant.

*Mr. T. Walter Fowler* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Commissioner of Patents, in the matter of interference between the application of Charles M. Funk, filed June 12, 1900; the application of Walter C. Matteson, filed December 18, 1899, and the application of George W. Haines, filed December 29, 1898. The number of this interference is 20,436, and relates to improvement of harvesters.

The declaration of the issue is formulated in three counts, as follows:

" 1. In a side-wheel harvester, the combination with a main frame, of supporting-wheels, bearings for the wheels movable relative to the frame, screws connecting the main frame and the bearings for changing the vertical position of the wheels relative to each other, and means for actuating said screws.

" 2. A thresher supported on wheels placed on opposite sides of it, and having screws connected to the same combined with means to turn said screws together to move the said wheels simultaneously in opposite vertical directions, whereby the thresher is maintained in a vertical position while working on a hillside.

" 3. In a traveling harvester and in combination with a threshing-machine frame thereof, bearing-wheels upon opposite sides of said frame having independent shaft and journal boxes therefor, guides in which said journal-boxes are movable up or down with relation to the ground, vertical screw-shafts connecting with the wheel-boxes, mechanism by which the journal-boxes of one wheel are moved in the opposite direction to and in unison with those of the other wheel and mechanism for reversing said movement."

On the issue of this interference priority of invention was awarded to Haines, the senior party to the interference proceeding.

Funk being the junior party, the *onus* of proof is upon him to establish priority of invention by clear and distinct proof.

The case is one principally of fact; but upon the application of facts, a few well-settled principles of law must be kept in view.

According to well-settled principles, Haines, being the senior party, the first to apply to the Patent Office, has, *prima facie,* the priority of right, and the *onus* of proof is upon any junior applicant to show, not only priority of invention, but he must also show that he has used reasonable diligence in adapting and perfecting his invention; for, in such case, the mere conception without actual reduction to practice within a reasonable time, does not avail a junior party making the claims. This principle is settled by many decisions, both of the Patent Office and of this court. It is also a settled principle in patent law, that whoever first perfects a machine is entitled to 'the patent therefor, and is the real inventor, although others may have previously had the idea and made some experiments towards putting it in practice; subject, however, to this qualification, that if the party who first conceives the invention was, at the time of a second invention by another party, using reasonable diligence in perfecting the same, he is entitled to be recognized as the first inventor, although the second to conceive may have been the first to reduce to practice, either actual or constructive. *Agawam Co.* v. *Jordan,* 7 Wall. 583. In order to constitute a patentable invention, there must be more than mere progress to an end, however near that progess may have approximated to the end in view. The law requires, not conjecture, but certainty; and where, as in the present case, the question relates to a machine, the conception must have been clothed in substantial form, which demonstrates at once its practical efficiency and utility. *Coffin* v. *Ogden,* 18 Wall. 120.

In the production of proof, in matters of interference, the parties must be held strictly to the dates set forth in their preliminary statements. In the preliminary statement filed by Funk, which is made under oath, he states that he conceived the invention contained in claims 9, 10 and 11, of his application, declared to be involved in this interference, on

or about the 15th day of August, 1893, as near as he could fix the time; that he first made a sketch, illustrating the invention, on or about the 12th day of May, 1898; that he first disclosed the invention to another person on or about the 2d day of April, 1898, as near as he could recollect; that he never made any small-sized model embodying the invention; but that the construction of a full-sized, operative device, embodying said invention, was commenced on or about the 1st of January, 1899, and was completed on or about the 20th of March, 1899, and was put into practical and successful operation during the harvest of 1899, and was manufactured for sale and commercial use.

The subject-matter of the interference is a device for harvesting standing grain on hillsides or unlevel ground, and is designed to be used in combination with a preëxisting machine for cutting, threshing, and winnowing grain, and transferring it from one part of the machine to another. The parties to this interference do not profess or claim to be the pioneers or first inventors of the means for this particular purpose, but they all appear to have been, as shown by the facts and found by the examiner of interferences, well acquainted with the invention of Benjamin Holt at the time of their first efforts at improvement. As found and stated by the examiner of interferences, Funk was an operator of a harvester containing the Holt invention, and which he attempted to improve. Matteson and Haines were independent manufacturers in the same town in which the Holt people carried on the manufacture of harvesters; and they directed their efforts to getting something in the way of improvement, but, in so doing, they desired to avoid infringement of the Holt patent. The Matteson & Williams Manufacturing Company, with which Matteson was connected, went into insolvency before Matteson filed his application, and was then put into the hands of trustees for the creditors. Among the principal creditors were the Holt concern. About the time this interference was originally declared the Holt concern absorbed the Houser-Haines Company, so that the Holt concern are real parties in interest in this proceeding as

against Funk. The examiner of interferences then states the case of Funk, as shown by the facts, and says that it consists of his, Funk's, unsupported allegation of conception of. the matter in issue, in the fall of 1895, while operating the Holt machine, though he alleges in his preliminary statement that he conceived the invention in 1893; but he does not claim in his testimony, to have made any effort to reduce his invention to practice at that time, nor for a considerable time thereafter. In the winter or spring of 1898, he worked with J. L. Hughes, an agent of the Houser-Haines Company, helping him to make some models of devices gotten up by Hughes for accomplishing the same purpose as the device of the present interference. Sketches and models of these latter devices were sent to the Houser-Haines Company, but were discarded or abandoned, either because they were deemed worthless or that they might conflict with the Holt patent.

It was not until some time in the latter part of April, 1898, that Funk disclosed his alleged invention of the matter in issue to Hughes, and to Severance, the village blacksmith, and a number of imperfect sketches were made about that time. Four sketches are in evidence as Funk's Exhibits 4, 5, 6 and 7, which are claimed to show the matter in issue. The examiner of interferences, in his opinion in the record, has reviewed the evidence in detail, and has stated the evidence as favorably to Funk as possible, and he came to the conclusion that Funk had proven conception, disclosure, and the making of sketches as early as the fore part of May, 1898, but did not reduce his conception to practice until he filed his application, June 12, 1900; and therefore, because of the want of reasonable diligence, or the failure to show a valid excuse for the long delay, he would necessarily fail in this interference, unless it could be found as a fact, that he had disclosed the matter in issue to Haines, the senior party, and the latter, by adopting and completing the invention, and reducing the same to actual practical operation, had thus entitled Funk to claim as his own the completed invention. And, upon review of the evidence bearing upon the fact of the alleged disclosure to Haines, by Hughes acting for Funk,

the examiner of interferences thought he was justified in
concluding that disclosure had been made to Haines, and that
the latter had unjustifiably appropriated the invention as his
own, and manufactured and tested the machine as early as
October, 1898; and it was put upon the market and ex-
tensively used in the harvest of 1899. This conclusion was
reached in opposition to the clear and positive denial of
Haines, as to the alleged disclosure made to him, and in re-
gard to which he is corroborated by two other unimpeached
witnesses. The conclusion of the examiner is based largely
upon the testimony of Hughes; and the result was that
priority of invention was awarded to Funk.

One of the witnesses produced by Haines was Martyn,
who was in the employ of the Houser-Haines Company in
the year 1898, as foreman of the construction of machines;
and he testifies that about the latter part of April, 1898, as
near as he can recollect, the company commenced figuring
on a harvesting-machine, having screws by which the wheels
were raised and lowered; that Haines first disclosed that
construction to the witness, and how it was to be made and
operated, one day, and the next day, he (the witness) made
a sketch of it and showed it to Haines; that he made the
drawings, Haines's Exhibits A and B, during the summer
of 1898, to show the machine they were getting up, and which
were afterwards completed in accordance with these exhibits;
that the machine was begun sometime during the month of
June; that these Exhibits A and B disclosed every count of
this issue.

This witness also testified that the machine was built in
the summer of that year, 1898, and was tested in 1898, and
operated in field-work in 1899, and that twenty-one machines
of that kind were built and put into use in the year 1899.
He also testified that he made the Exhibits A and B from
sketches made by Haines.

The witness Kincaid also testified to facts strongly cor-
roborative of the testimony of Haines.

From the award of priority to Funk by the examiner of
interferences appeals were taken to the board of examiners-

in-chief, by both Haines and Matteson. And, upon very full and careful review and analysis of the evidence, that tribunal reversed the award of the examiner of interferences, and adjudged priority of invention in favor of Haines. From this determination both Funk and Matteson appealed to the Commissioner of Patents, and these last appeals were heard and decided by acting Commissioner Moore. The acting Commissioner went carefully and fully over the evidence, and his conclusion was in affirmance of the findings and judgment of the examiner-in-chief. It is from this latter decision that Funk has appealed to this court.

Both the examiners-in-chief and the acting Commissioner, upon careful analysis of the evidence, concluded that Funk in fact had never made or operated any machine containing the invention of the issue of this interference. That the allegations of Funk, in his preliminary statement, to the effect that he had invented, made, and operated the machine within the description of the present interference are founded wholly upon his contention that he first conceived the invention, and that his conception was disclosed to Haines, and that the actual reduction to practice of the invention by Haines was only the practice of his, Funk's, invention, and that he, Funk, is entitled to it as the production of his invention. But the examiners-in-chief and the Acting Commissioner conclude otherwise, and in their conclusion, upon careful examination of the evidence, we entirely concur. They find and conclude from the evidence, that all that Funk ever did towards making and completing the invention in issue, was the making a pencil sketch, and the causing other pencil sketches to be made, and the delivery of two of those sketches to his witness Hughes. That there was no evidence to establish the fact, other than the testimony of Funk himself, that he ever had any possession of the invention here at issue prior to the year 1898. And if we assume the truth of the statement contained in the preliminary statement of Funk, or even that contained in his testimony, as to the time of conception of the invention, the great delay in attempting to complete and reduce the invention to practical operation,

is entirely without explanation, and must, consequently, give rise to a strong presumption against his pretension.

As very properly said by the acting Commissioner, Haines being the first to reduce to practice, and first to apply to the Office, must be presumed to be an original inventor of the machine, which, it is conceded, he built and operated, and for which he was first to make an application for a patent: Funk controverts this right of Haines, and it is incumbent upon him to show, by clear and indubitable proof, that the presumption in favor of Haines is not well founded, and that the right is in himself, as against both Haines and Matteson. Such proof he has failed to produce.

Upon the record before us, and in view of the legal principles applicable to the case, and to which we have referred, we hold that the decision appealed from is correct, and must therefore be affirmed. The proceeding of this court and this opinion will be certified to the Commissioner of Patents, as directed by the statute.                    *Decision affirmed.*