# ROBINSON v. McCORMICK.*

PATENTS; MASTER AND SERVANT; INTERFERENCE; REDUCTION TO PRACTICE.

1. While an inventor who employs another to embody his conception in practical form is entitled to any improvement thereon due to the mechanical skill of the employee, if, in doing the work, the employee goes further than mechanical skill enables him to do, and makes an actual invention, he is entitled to the benefit of his invention. (Following *Milton* v. *Kingsley*, 7 App. D. C. 531; *Huebel* v. *Bernard*, 15 App. D. C. 510; *Gedge* v. *Cromwell*, 19 App. D. C. 192; *Gallagher* v.

---

*Patents—Right of Employer to Invention of Employee.—For an exhaustive discussion of the rights of employees and employers in respect to patents, including the right of the employer to the invention of the employee, see the following editorial notes presenting all the American and English authorities on their respective subjects: Rights of employers and employees in respect to patents, note to Barber v. National Carbon Co. 5 L.R.A.(N.S.) 1177; Right of master to invention of servant, note to Pressed Steel Car Co. v. Hansen, 2 L.R.A.(N.S.) 1173.

D. C.]                           Syllabus.

*Hastings,* 21 App. D. C. 88; *Flather* v. *Weber,* 21 App. D. C. 179; and *Sendelbach* v. *Gillette,* 22 App. D. C. 168.)

2. To claim the benefit of his employee's skill and achievement, it is not sufficient that an employer had in mind the desired result, and employed another to devise means for its accomplishment, but he must show that he had an idea of the means to accomplish the particular result, which he communicated to the employee in such detail as to enable the latter to embody the same in some practical form.

3. Where, in an interference involving an indicator for duplicate sales slip files, between R. and McC., in which the question was as to whether McC., reduced to practice prior to the filing date of R., it appeared that McC. had made a disclosure to one L., a fellow officer and stockholder in a manufacturing company; that L. thereupon constructed a device for which, with McC.'s knowledge and consent, he applied for a patent and was put in interference with R., which interference resulted in favor of the latter by reason of L.'s abandonment of the controversy on the ground that McC. was the inventor of the broad issue of the interference; that it was conceded in the Patent Office that L.'s device was different in detail from that disclosed by McC. in his application, and that L. would be entitled to a patent for his structure, but the office found that it contained a reduction to practice of McC.'s invention, which inured to the latter's benefit, in view of the relations between him and L.,—it was *held,* on a review of testimony, that the construction of L. was more than a mechanical improvement of the idea communicated to him by McC.; that L. was the original inventor; and that the Commissioner of Patents erred in awarding priority to McC.

4. The reduction to practice of an invention by an original inventor cannot be taken as a reduction to practice by another, merely because the ownership of the claims of both may afterwards become vested in the same person or persons. It is not enough to entitle an applicant to a patent that someone else, not his agent, has shown the practicability of the invention by reducing it to practice. (Following *Hunter* v. *Stilkeman,* 13 App. D. C. 214, and distinguishing *Wyman* v. *Donnelly,* 21 App. D. C. 81.)

No. 406. Patent Appeals. Submitted January 14, 1907. Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The facts are stated in the opinion.

*Mr. Melville Church* for the appellant.

*Mr. A. C. Paul* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding with the following issue:

"A device for use in keeping accounts, comprising a casing, a series of file holders therein, each adapted to carry loose files, and an indicator for each file holder normally in a position from which it must be moved in order to withdraw from or deposit a file within its holder, whereby the indicator is certainly changed from normal to indicating position whenever access is had to said file, without having to remember to make such change, and whereby it may be certainly determined, after a certain period, at a glance, which file holders have been used during said period.

"2. A device for use in keeping accounts, comprising a casing, a series of file holders therein, each adapted to carry files, and indicators for the file holders, each normally in a position from which it must be moved in order to withdraw from or deposit a file within its holder, whereby the movement of the indicator from normal position is not dependent on the memory of the operator, and whereby, after a certain period, it may be certainly determined at a glance which file holders have had their indicators moved from normal to indicating position during said period."

As stated by the Examiner of Interferences:

"The invention in issue is an indicator for duplicate sales slip files. In the use of a short account system a case or cabinet is provided wherein file holders are kept, each containing duplicate sales slips whereon the customer's account and daily balances appear. It is customary to enter daily the totals of each individual's account, in a book kept for that purpose. In order to obviate the necessity of handling all the file holders in the cab-

inet every day, an indicator was devised so that it could be told at a glance which file holders had been removed from the cabinet during the day."

William W. Robinson, whose application was filed January 12, 1904, alleged conception September 6, 1903, disclosure November 6, 1903, and reduction to practice November 10, 1903.

Horace McCormick's application was filed February 16, 1905; he alleged conception March 20, 1903, and reduction to practice December 22, 1903.

Each tribunal of the Patent Office substantially agreed that Robinson's evidence was not sufficient to show conception and reduction to practice prior to the date of filing his application. Apparently, he must at least have conceived the same some time in December, 1903, but under the conditions of the case it is unnecessary to determine the exact date of his conception. They all agreed in holding, also, that McCormick had a complete conception of the invention on or before December 1, 1903. All concurred in awarding priority to McCormick on the ground that his invention had been reduced to practice by one Lumbard in December, 1903.

Assuming the correctness of the findings that McCormick was the first to conceive the invention, and that Robinson is only entitled to the benefit of his filed application as a constructive reduction to practice, we pass to the consideration of the finding that McCormick reduced the invention to actual practice in December, 1903. If the decision of the Commissioner on this point is without proper support, it must be reversed; otherwise affirmed.

It appears by recitals in the decision referred to, that one M. A. Lumbard had filed an application for a patent for a file holder with automatic indicator, and had been placed in interference with Robinson. The Examiner of Interferences states that two of the counts of the issue of that interference were the same as the counts of the present issue; and counsel for McCormick state in their brief that Lumbard's application made claims on "one feature of the structure or combination constitut-

ing the issue." The record of that proceeding, however, is not incorporated in the record before us. In view of the evidence and the production, in connection therewith, of Lumbard's construction, the omission is not material. It is also stated that Lumbard took no evidence in the case, and the decision went against him on the record. The reason assigned for his abandonment of the controversy, by the counsel for McCormick, who represented Lumbard, is the discovery by them, and the realization by Lumbard that McCormick, and not he, was the actual inventor of the broad issue of the interference.

The evidence shows that, since some time prior to Lumbard's alleged conception, both he and McCormick were connected with the Complete Bookkeeper Company of Des Moines, which had been organized as a corporation for the purpose of manufacturing a bookkeeping system devised by McCormick. Lumbard was its president and McCormick its general manager. Both were stockholders. The corporation appears to be owner of McCormick's rights as involved in this interference.

In testifying, McCormick explained the original sketch of the invention claimed to have been conceived by him early in 1903, as follows:

"No. 1 is a perpendicular shaft running up and down on the left-hand side of the first row of files facing the cabinet. No. 2 is a small ratchet wheel on the shaft No. 1 opposite each and every individual file. No. 3 is the indicator extending out over the individual file, and attached to shaft No. 1 above and below the ratchet wheel No. 2, said ratchet wheel being fastened solid on the shaft No. 1, and said indicator No. 3, being loose on shaft No. 1, with a spring attached, when the indicator is pulled out, catches in said ratchet No. 2 and prevents it from being pushed back, said indicator also having a guard attached to it which goes clear around the ratchet wheel, with square or flat surface that locks it from being pulled out farther than at right angles with the cabinet or file. No. 4 is a lever attached to the top of shaft No. 1. No. 5 is a pin in the outer end of said lever. No. 6 is a horizontal bar put on the pins in lever on shafts No. 1, and which was designed to lock at one end so that when all bal-

ances were taken in the evening it could be unlocked and pushed so as to revolve shafts No. 1 until indicators that had been used during the day returned to place over the file. No. 7 is intended to mark the place where spring catches in ratchet. No. 8 indicates the individual customer's file, and 9 the frame of the cabinet. This, being the first rough pencil sketch when I first conceived the idea, only gave the merest outline so as to help me fix it in my mind and put it before my eyes."

He also testified that shortly after the formation of the company, early in December, 1903, he described the invention to Lumbard, as follows:

"I described that my idea consisted of an indicator attached exclusively to the cabinet constructed by means of a perpendicular shaft commencing at the outside of the left end of rows in the cabinet when facing the cabinet putting one of these shafts between each row of files, having on these shafts a small ratchet wheel opposite to each individual file, said ratchet wheel fastened solid to the shaft; the attaching of an indicator for each file, said indicator being loose on the shaft with a spring attached which would work in the teeth on the ratchet wheel; also attached to the indicator a yoke which would go clear around the ratchet wheel outside, having at one point a flat surface, which when the indicator was turned out at right angles with the cabinet to permit of the taking out of the book or file, said indicator could not go farther; that is, than to stand at right angles with the cabinet, said spring standing in the teeth of the ratchet would not permit of the indicator going back. The upper end of all of these horizontal shafts to be connected by cranks with a horizontal rod locked at one end so that indicators could only be thrown back at the close of the day by unlocking said rod and revolving said perpendicular shafts one-half circle so as to replace indicators that had been used over the ends of files."

Again, he said that he told Lumbard that it must be an "absolutely automatic device." Lumbard objected to it on the ground that it would be too expensive to construct, and said, from the ideas witness had given him, he thought he could make

one to answer the purpose that would not be so expensive to construct. "The conversation was dropped at this point. I was going out of town for a few days, and when I returned Mr. Lumbard showed me a device which he had evolved, he said, from my idea." What he meant by an "absolutely automatic device" is indicated in his statement of a previous disclosure to Long, who also became an incorporator. He said that he told Long it would work "automatically, that is, that when the indicator is set to get a book on file out of the cabinet, it would be impossible to throw it back to place over the file until the indicator device was unlocked and all indicators used that day thrown back at one time."

The actual working of the device as indicated in the foregoing descriptions was this: A person desiring to remove a file holder from its pigeon hole would turn out the corresponding "flap" or "flipper" by hand; and when so turned out it remained an indicator until turned back, with all other indicators, by a movement of the rod which was under the control of the bookkeeper.

With this knowledge, Lumbard went to work, and, without further disclosure, or any assistance by McCormick, constructed a file holder with an automatic "flap" or "flipper" to serve as an indicator, that has been made an exhibit in the case. This device is simple, useful, and of cheap construction. It is an ordinary file holder with a small metal "flap" or "flipper" attached to the back of the book, and lying flat on the cover when that book or file holder is in place. It comes into view when the book or file holder is withdrawn. It works loosely on the hinge of the cover, so that when the cover is opened or turned back for the deposit of a sales slip or other memorandum in the files it moves with it and stands straight out as an indicator when the cover is turned back and the file holder returned to its pigeon hole or compartment. The file holder may then be withdrawn and opened any number of times, without disturbing the indicator. When the bookkeeper has examined the file holder and made his entry, he turns the "flap" or "flipper" back to its normal position upon the cover, and returns the

file holder to its place. The file holder can be removed and returned without disturbing the "flap" or "flipper," which only turns back when the file holder is opened by raising the cover to obtain access to the files underneath it. This arrangement is entirely independent of the cabinet case, and the file holder answers its particular purpose when laid upon a table or arranged with others upon a shelf. No matter where or how the file holder is placed, the "flap" or "flipper" performs its functions as an indicator to the bookkeeper whenever the cover is opened to deposit a file. It is essentially different from the construction that McCormick, prior thereto, had in mind. That McCormick and Lumbard regarded it as patentably distinct is apparent from their action. Lumbard, with the knowledge and approval of McCormick, immediately sent it to a solicitor for the purpose of preparing the application of a patent therefor. It is this application which, after some amendments suggested in the office, was later placed in interference with Robinson, with the result before mentioned. McCormick, as the holder of a previously issued patent, was not altogether ignorant of the law that a patent can only be issued to the real inventor. The same solicitors were employed, subsequently, to make the present application for McCormick.

In the course of his cross-examination in relation to the abandonment of Lumbard's application, McCormick was asked this question: "When did you find out that Lumbard's application for patent would not give your company a monopoly of the indicator feature?" His reply was: "We found out when Mr. Robinson was put in interference with Lumbard that there was a question as to the priority of the conception of the idea between Mr. Lumbard and Mr. Robinson, and accepted as a fact, without any demand of proof, that Mr. Robinson stated the truth when he fixed the date of his conception as September, 1903, Mr. Lumbard frankly admitting that he did not conceive the idea of his until December, 1903." After receiving a copy of Robinson's application and preliminary statement, he said that considerable time was spent in corresponding with

their attorneys as to the advisability of contesting the interference between Robinson and Lumbard.

We shall not consume time with a review of the evidence explanatory of the prosecution of Lumbard's application, its final abandonment, and the presentation of McCormick's application, which, to say the least, is not completely satisfactory. In our view of the case, the question of McCormick's estoppel, or abandonment of his invention, need not be considered.

The substantial question for determination is this: Does the benefit of the reduction to practice of Lumbard's construction in December, 1903, inure to McCormick? All three of the tribunals held that it did. The Examiner of Interferences said: "It is true the specific device made by Lumbard is different from that disclosed by McCormick and shown in his application, but it is no less a reduction to practice of the generic invention. See *Slaughter* v. *Halle,* 21 App. D. C. 19, 99 Off. Gaz. 2771; *Wyman* v. *Donnelly,* 21 App. D. C. 81, 104 Off. Gaz. 310. * * * This reduction to practice is held to inure to the benefit of McCormick." In support of this conclusion he cites, and quotes from, *Milton* v. *Kingsley,* 7 App. D. C. 531, 75 Off. Gaz. 2193.

The Examiners-in-Chief briefly indorsed this conclusion, saying: "While this description does not comprehend every detail of the device shown in McCormick's application drawing, it is, in our opinion, sufficient to identify that construction as the one which McCormick had in contemplation in June, 1903. This testimony, at least, shows that prior to the time when, in December, 1903, McCormick made his alleged disclosure to Lumbard he was devising an indicator for file holders which is substantially like that revealed by him to Lumbard." The Commissioner, who agreed generally with the others, said: "In the device made by Lumbard, as shown in exhibit 4, the indicator is mounted upon the file holder in such position that the opening of the file holder will operate the indicator. This structure differs in detail from the disclosure by McCormick to him, which contemplated mounting the indicators on the casing in such position that the indicator must be operated to withdraw

a file holder from the casing." After holding substantially that the work of Lumbard in improving upon McCormick's idea was no more than the work of a skilled mechanic in the execution of a general idea communicated to him for the purpose, he proceeds as follows:

"Admitting that Lumbard is entitled to patent the specific structure invented by him in carrying out his own conception, it is not seen why this structure does not at the same time contain a reduction to practice of McCormick's invention, which shall inure to McCormick as the sole conceiver thereof. The invention in issue is a broad one. Each count includes a casing, a series of file holders, and an indicator for each holder. The specific form or location of the indicator is not stated. The only limitation is that it shall be normally in a position from which it must be moved to gain access to the file holder. Many forms of indicators would answer this purpose. The counts of the issue read equally well upon a device including the indicator located as shown in Lumbard's exhibit 4, McCormick's application drawings or figures 3, 4, 5, and 6 of the drawing of Robinson. Lumbard's device may be cheaper to make, and an improvement upon the McCormick device, but there is no change in the operation of the system as a whole. It is well established, where a different form of invention is made and tested from that disclosed by an applicant in his application, and the claims are sufficiently broad to cover both forms, that the form made and tested is a reduction to practice of the broad invention. *Wyman* v. *Donnelly,* supra. Similarly, the embodiment of the McCormick invention by Lumbard in structure, although of a different specific form, is a reduction to practice of the broad invention of McCormick.

"It was urged by counsel for Robinson at the hearing that there was no proper combination between the casing and the file holder in the device wherein the indicator was attached to the file holder. It does not appear that this contention is entitled to any weight. The main object of the invention disclosed by the issue is to provide a device whereby it may be determined which of a number of holders employed in a system of

keeping accounts have been open and used during the day. The casing becomes an essential element as a means for supporting the number of holders which it is necessary to use in the system. While it may be true that there is no direct co-operation between the indicator and the casing in this form of the invention, it is not necessary, in a new combination of old elements, that each element should modify or change the mode of operation of all the others, but only that the combination should produce a new and useful result as a product of the combination. *National Cash Register Co.* v. *American Cash Register Co.* 62 Off. Gaz. 449."

We have stated the grounds of the concurring decisions at some length, to show that the question under consideration is practically of law, rather than fact. In this consideration it must be borne in mind that the question of invention, as between McCormick and Lumbard, depends upon the thing disclosed by the former to the latter prior to the latter's construction, and not upon what is now shown in McCormick's application, in accordance with which the issue in controversy was framed. This application not only includes the structure of Lumbard, but also improvements upon McCormick's original conception as disclosed by Lumbard.

Because of the relation between these two, who were officers and stockholders of the corporation, it is held that the benefit of Lumbard's work inures to McCormick because it merely carried out the idea given him by the latter. Regarding the two as occupying substantially the relation of employer and employee at the time, the well-established principle is applied that an inventor who employs another to embody his conception in practical form is entitled to any improvement thereon due to the mechanical skill of the employee. The latter must invent something, not merely improve, by the exercise of mechanical skill, upon a conception which he has been employed to work out. *Agawam Woolen Co.* v. *Jordan,* 7 Wall. 583, 603, 19 L. ed. 177, 182; *Milton* v. *Kingsley,* 7 App. D. C. 531, 537; *Huebel* v. *Bernard,* 15 App. D. C. 510, 514; *Gedge* v. *Cromwell,* 19 App. D. C. 192, 198; *Gallagher* v. *Hastings,* 21 App.

D. C. 88, 99; *Flather* v. *Weber*, 21 App. D. C. 179; *Sendelbach* v. *Gillette*, 22 App. D. C. 168, 177. The reason of this rule is obvious. Inventors are often compelled to have their conceptions embodied in construction by skilled mechanics or manufacturers, whose practical knowledge often enables them to suggest and make valuable improvements in simplifying and perfecting machines or devices. These are things they are employed and paid to do. The inventor is entitled to protection from their efforts to claim his invention. At the same time, an employee is to be protected from the rapacity of his employer also; and if, in doing the work assigned him, he goes farther than mechanical skill enables him to do, and makes an actual invention, he is equally entitled to the benefit of his invention. Necessarily, the relations between them generally impose upon him the burden of showing that he has made an invention in fact. To claim the benefit of the employee's skill and achievement, it is not sufficient that the employer had in mind a desired result, and employed one to devise means for its accomplishment. He must show that he had an idea of the means to accomplish the particular result, which he communicated to the employee in such detail as to enable the latter to embody the same in some practical form. Tested by these principles, we are of the opinion that the construction of Lumbard was more than a mechanical improvement upon the idea of means communicated to him by McCormick. It is admitted by all that the structure differs from that of McCormick; and the Commissioner admits that Lumbard would be entitled "to patent the specific structure invented by him in carrying out his own conception." He then rests his decision that McCormick is entitled to claim the benefit of the reduction to practice, upon the construction of the issue, the invention of which he said was a broad one: "Each count includes a casing, a series of file holders, and an indicator for each holder. The specific form or location of the indicator is not stated." As before suggested, the casing and the series of file holders kept therein had been long in use, and perform no new function in a bookkeeping system of any kind. McCormick's communicated idea

comprehended nothing more than the attachment of indicators to the casing through means of a rod, one opposite or adjacent to each pigeon hole in the series of file holders; and it seems quite clear that these indicators were intended to be moved out by hand, according to the original idea, before the corresponding file holder could be withdrawn to deposit a slip in it. When out, they could not be turned back except by moving the rod. McCormick had no idea at that time of attaching the indicator to the file holder itself. This was the conception of Lumbard. He rejected the complicated and expensive combination of McCormick, and devised a simple "flap" or "flipper," for attachment to the file holder itself, which was automatically operated whenever the cover of the file holder was raised or turned back to deposit a slip. This had no necessary connection with a casing or a series of file holders. It operated in the same way by itself, with others placed upon a shelf, or with an indefinite number of others arranged in series in a case of any size. Whether, then, Lumbard be regarded as the employee of McCormick, or his partner, or as a mere stockholder of the same corporation, which was the actual relation, we are of the opinion that he must be held to be the inventor of the automatic indicator attached to the file holder, as shown in his construction.

If Lumbard had proceeded with his application, and been included in an interference with McCormick, he would be regarded as an independent inventor, and not a mechanical developer and improver of an idea of means disclosed by the latter. In such case his reduction to practice would not, of course, be available by McCormick. That he was considered by himself, as well as by McCormick, an independent inventor, was shown by the first application for patent; and McCormick's conduct would have estopped him to thereafter claim the invention as against a continued claim by Lumbard. That they have, now, the same interest in establishing McCormick's present claim had a natural tendency to cause Lumbard, as a witness in this case, to minimize his own claim of invention as far as he could fairly do so. We think, too, that the substantial cause of aban-

doning the prosecution of Lumbard's application was the apprehension that Robinson might be able to go back several months behind the date to which Lumbard was necessarily confined, namely, December, 1903. Had Lumbard persisted in prosecuting the interference with Robinson, he would, under the view taken of the latter's evidence of conception by all of the tribunals of the office, have obtained an award of priority. The reduction to practice of an invention by an original inventor cannot be taken as a reduction to practice by another, merely because the ownership of the claims of both may afterwards become vested in the same person or persons. It is not enough to entitle an applicant to a patent that someone else, not his agent, has shown the practicability of the invention by reducing it to practice. *Hunter* v. *Stikeman,* 13 App. D. C. 214, 226.

*Wyman* v. *Donnelly,* 21 App. D. C. 81, 85, is relied on to show that a machine first devised may be regarded as reduced to practice by the successful operation of another machine, with a change in a part of the complicated mechanism, which did not, however, change or affect the necessary elements of the issue. Without pausing to point out what may be other material differences between that case and this, it is only necessary to say that Donnelly was not only the conceiver of the invention, but the constructor, also, of both machines. There was no question of another inventor and constructor.

For the reasons given, we are constrained to reverse the decision appealed from. It is so ordered; and that this decision be certified to the Commissioner of Patents as the statute requires.                                    *Reversed.*