# NETH v. OHMER.*

# OHMER v. OHMER.

---

**PATENTS; INTERFERENCE; MASTER AND SERVANT; BURDEN OF PROOF; DILIGENCE.**

1. In an interference proceeding between an employer and two of his employees, involving the invention of an improvement in fare registers, where it appeared that the employer, having in mind the result to be accomplished, and not only a broad conception, but a very definite idea, of the invention in question, directed his employees to make a machine embodying the improvements, and assisted in preparing the drawings, and was present almost daily, inspecting the work as it progressed, it was *held* that the employer was entitled to an award of priority.

2. Where one conveys to his employees information and instructions to proceed and manufacture a piece of mechanism which, with the instructions imparted, can be constructed by the application of ordinary mechanical skill, he is entitled to the benefit of the skill and ingenuity of the employees in successfully completing the device, and as against such employees is entitled to a patent for the invention embodied in such machine. (Following *Huebel* v. *Bernard*, 15 App. D. C. 510.)

3. Where in an interference proceeding, in which the burden is upon the senior applicant to show a conception prior to the junior party's reduction to practice, and also reasonable diligence in reducing to practice, it appears that the senior party, having conceived and planned, prior to the other party's reduction to practice, a machine embodying the invention, which was completed subsequent thereto, and that he constructed the machine, which was a complicated and difficult piece of mechanism, in four months, it was *held* he was entitled to an award of priority.

Nos. 431 and 432. Patent Appeals. Submitted January 16, 1908. Decided March 3, 1908.

---

*\*Patents—Master and Servant.*—As to engagement of employee for the purpose of perfecting an original conception of the employer, see note to Barber v. National Carbon Co. 5 L.R.A.(N.S.) 1184.

HEARING on two appeals from decisions of the Commissioner of Patents in interference proceedings.         *Affirmed.*

The facts are stated in the opinion.

*Mr. Melville Church* for Neth and Tamplin and John F. Ohmer.

*Mr. H. A. Toulmin* and *Mr. E. L. Reed* for the appellee, W. I. Ohmer.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

These are appeals from the Commissioner of Patents in an interference case. The claims in issue are as follows:

"1. In a fare register, the combination, with a plurality of specific fare printing counters, of a separate actuating mechanism for each counter, a grand total passenger printing counter, and operating mechanism whereby said last-mentioned counter is actuated by each of the specific fare actuating mechanisms.

"2. In a fare register, the combination, with a plurality of specific fare indicators, and a corresponding plurality of specific fare printing counters, of separate actuating mechanisms for simultaneously operating each fare indicator and the corresponding counter, a grand total passenger printing counter, and operating mechanism whereby said last-mentioned counter is actuated by each of the specific fare actuating mechanisms."

Neth and Tamplin filed their application September 12, 1904; John F. Ohmer filed his application January 11, 1904; and Wilfred I. Ohmer filed his application May 4, 1903. The invention embodied in these claims over the prior existing inventions consists in the "grand total passenger printing counter." Quoting from the opinion of the Commisioner of Patents: "Prior to the date of the invention in issue, fare registers had been made which included a plurality of specific fare indicators, a corresponding plurality of specific fare printing

counters, a separate actuating mechanism for simultaneously operating each fare indicator and the corresponding counter, and a visible indicating counter for noting the total number of passengers, adapted to be actuated upon the operation of the mechanism of each class of specific fare indicators. The invention in issue comprises the addition to this type of a machine of a grand total passenger printing counter and mechanism whereby it is actuated by each of the specific fare counting actuating mechanisms."

Considering first the claims of Neth and Tamplin, it appears that in October, 1902, they were employed by Wilfred I. Ohmer in his factory at Dayton, Ohio. Neth and Tamplin make no claim to any conception of this invention prior to October 25, 1902. Neth testifies that on that date Wilfred I. Ohmer called him into his office, and asked him if he could make a street car register, to which he replied that he thought he could. There is considerable conflict as to just what occurred between these parties at that time and afterwards during the construction of the machine. It is clear that Neth, assisted by Tamplin, contructed the machine, but it also appears that Wilfred I. Ohmer was present almost daily, and assisted in preparing the drawings and inspecting the work as it progressed. We think the evidence discloses that Wilfred I. Ohmer not only laid before Neth at his first conversation certain rude sketches and drawings hereafter referred to, but imparted to him sufficient knowledge of what he wanted constructed to enable anyone with reasonable mechanical skill and knowledge of the art to work out the invention.

It should be remembered at this point that Wilfred I. Ohmer was the owner of the patent for what is known as the Kelch machine. This is a car fare register containing all the qualities of the machine in controversy, except the grand total printing counter. The Kelch machine contained the fare indicators and specific fare printing counters that recorded the number of passengers carried on each particular fare,—ticket, transfer, three-cent fare, five-cent fare, etc.,—but lacked a mechanism by which the total number of passengers carried up to any given

time could be recorded. The invention before us is simply this addition to the Kelch machine. Neth and Tamplin had been working in the factory where Wilfred I. Ohmer had been manufacturing the Kelch machines; hence the duty imposed upon them, of building a machine embracing the present invention, was one with which they were familiar. They were skilled in the art of making car fare registers.

It appears that Wilfred I. Ohmer, prior to his first conversation with Neth, had prepared a record sheet showing in tabulated form what he wished to have recorded by a machine such as he had in mind,—an indicator sketch, a totalizer sketch, a printing device sketch, and a cabinet sketch. Relative to the evidence showing the knowledge Wilfred I. Ohmer possessed on October 25, 1902, at the time of his conversation with Neth in his private office, we quote from the opinion of the Commissioner of Patents: "Wilfred I. Ohmer has offered in evidence a diagrammatic sketch 'Exhibit, 1899, General Sketch,' which he says shows the idea of including a grant total printing counter. Whistler testifies that Wilfred I. Ohmer showed this sketch to him in March, 1901, and explained to him in connection therewith that he proposed to make a machine embodying a grand total printing counter operated by each specific fare actuating mechanism, but did not suggest any specific mechanism for that purpose. George Ohmer, an uncle of Wilfred I. Omer, says that Wilfred I. Ohmer showed this sketch to him July 25, 1901, and his testimony concerning the extent of disclosure is substantially the same as Whistler's. The testimony relative to this sketch is not sufficient to establish conception of the invention by Wilfred I. Ohmer, but indicates that as early as the year 1901 he had in mind the result to be accomplished. Wilfred I. Ohmer also offers in evidence 'Exhibit, October 1, 1902, Totalizer Sketch,' a sketch indicating, in one view, banks of printing counters and a total printing counter, but showing no mechanism for operating the total printing counter; 'Exhibit, October 17, 1902, Printing Device Sketch,' which comprises the illustration of a printing mechanism similar to that in the 'Practical Machine;' 'Exhibit, October 21, 1902,

Cabinet Sketch,' which shows front and end views of a cabinet substantially like that of the 'Practical Machine,' the end view diagrammatically illustrating in dotted lines parts of the printing mechanism as subsequently embodied in that machine; and 'Exhibit, Record Sheet Middle of October, 1902,' which is a typewritten sheet of tabulations whose columns, including the 'grand total,' correspond to the record sheet delivered from the 'Practical Machine.' While none of these exhibits show any specific means for operating a grand total printing mechanism, the testimony of Whistler and of George Ohmer establishes the fact that these sketches were made prior to the date of conception alleged by Neth and Tamplin, and leaves no doubt that Wilfred I. Ohmer not only had in his mind the idea of adding a total printing counter to a fare register; but that he had determined the relative arrangements of the parts." While some of these sketches do not seem to disclose the means for applying them to the invention as finally perfected, we are of the opinion that, taken together with what is disclosed after the first conversation with Neth, Wilfred I. Ohmer at that time had not only a broad conception, but a very definite idea, of the machine which was constructed by Neth and Tamplin while in Ohmer's employ, and upon which Wilfred I. Ohmer based his application for patent.

It is well settled that if one conveys to his employees information and instructions to proceed and manufacture a piece of mechanism which, with the instruction imparted, can be constructed by the application of ordinary mechanical skill, that such employer is entitled to the benefit of the skill and ingenuity of the employee in successfully completing the device. Many decisions of the courts hold that the inventor may avail himself of the mechanical skill of others in reducing his inventive ideas to practice. In *Sparkman* v. *Higgins,* 1 Blatchf. 206, Fed. Cas. No. 13,208, the court said: "To constitute an inventor, it is not necessary he should have the manual skill and dexterity to make the drafts. If the ideas are furnished by him, for producing the result aimed at, he is entitled to avail himself of the mechanical skill of others to carry out practically

his contrivance." In *Yoder* v. *Mills,* 25 Fed. 821, it was said: "The only contested inquiry in the case involves the right to the invention itself. All the evidence exhibited relates to it. Both parties claim the merit which the patent apparently accords to the complainant, and, without discussing the evidence, it is enough for us to say that, in view of the decided preponderance of the proofs, it is justly devolved upon him. The conception of the invention belongs to him, and all that the defendants contributed was the necessary mechanical skill, furnished at his request, to embody it in an operative form. He did not lose the merit which is due to inventive suggestiveness, and devolve it upon the mechanic, whose only function was to materialize it." The same rule is announced with approval in *Huebel* v. *Bernard,* 15 App. D. C. 510; *Agawam Woolen Co.* v. *Jordan,* 7 Wall. 583, 19 L. ed. 177.

Neth and Tamplin make no claim to having conceived the invention until after Wilfred I. Ohmer set them to work making a fare register, which culminated in what is known in this case as the "February, 1903, Practical Machine." Wilfred I. Ohmer claims to have conceived and disclosed the invention before that time, and, we think, has produced sufficient corroborative proof of that fact to fully sustain the rulings of the tribunals of the Patent Office in giving him priority over Neth and Tamplin.

This brings us to a consideration of the rights of John F. Ohmer. He claims a reduction of his invention to practice in January, 1903. This was four months before Wilfred I. Ohmer filed his application in the Patent Office, and one month before the completion of the "February, 1903, Practical Machine." Assuming that John F. Ohmer's reduction to practice was complete in January, 1903, which is not entirely clear, the burden of proof would be on Wilfred I. Ohmer to show that he not only conceived the invention prior to January, 1903, but that he used reasonable diligence in reducing his invention to practice. We have found that Wilfred I. Ohmer, before Neth and Tamplin came on the scene in October, 1902, had a broad conception of the invention that culminated in the "Practical

Machine." As we have observed, prior to October, 1902, Wilfred I. Ohmer had been formulating, in rude sketches, plans for making this improvement, which plans and sketches were in his possession and produced at the time he held his first conversation with Neth in October, 1902. The record discloses that, following this conversation, all except possibly one of the working plans and drawings, material to the construction of the "February, 1903, Practical Machine," were completed before January, 1903.

It is contended by counsel for appellant that, since the Wilfred I. Ohmer "Practical Machine" was not completed until February, 1903, there is no evidence that before the alleged reduction of the invention to practice by John F. Ohmer, in January, 1903, the machine of Wilfred I. Ohmer either contained all the elements of the issues, or that all the elements of the issues were conceived or worked out before that time. It is true that Wilfred I. Ohmer testified that he and his workmen worked on the machine until February 23, 1903. We think it clearly appears, however, not only from the evidence of Wilfred I. Ohmer, but of other witnesses, that all the elements embodied in the "Practical Machine" were conceived and planned before the date of the alleged reduction of the invention to practice by John F. Ohmer.

Certainly, it cannot, in the light of the evidence, be successfully contended that Wilfred I. Ohmer did not use reasonable diligence in reducing his invention to practice, when it is considered that the "Practical Machine," a complicated and difficult piece of mechanism, was constructed in four months.

John F. Ohmer testified that he had a conception of the invention as early as February, 1901, but as no disclosure was made until January, 1903, we think the evidence, being uncorroborated and of a self-serving nature, is not entitled to sufficient credit to defeat the rights of Wilfred I. Ohmer. Conceding that John F. Ohmer conceived the invention in February, 1901, he has totally failed to show due diligence in reducing the invention to practice; hence this date of conception, if it were not clouded in doubt, could avail him nothing. The earliest

possible date that can be accorded John F. Ohmer, under any fair consideration of the record, is January, 1903, and that is too late to establish his priority.

From an examination of the whole case, we are of the opinion that the evidence fully sustains the rulings of the three tribunals of the Patent Office, and that priority should be awarded to Wilfred I. Ohmer.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify the proceedings, as required by law.                                          *Affirmed.*