**ALTO COMPANY, a Partnership, Plaintiff,**

v.

**FISH MANUFACTURING CO., Inc., Defendant.**

Civ. A. 857–55.

United States District Court
D. New Jersey.

Feb. 8, 1957.

Thorn Lord, Newark, N. J., Richard L. Underwood, Washington, D. C., of counsel, for plaintiff.

Alfred W. Seiss, Phillipsburg, N. J., Conder C. Henry, Edwin E. Greigg, Washington, D. C., of counsel, for defendant.

FORMAN, Chief Judge.

The plaintiff in this case, Alto Company, is a partnership consisting of Bernard Schmidt, Robert J. Schmidt, Richard W. Schmidt, Albert S. Schmidt, II, Helen Anne Mower, and Carolyn A. Wallace, all of Harrisburg, Pennsylvania; Berna L. Herrick, of Sherrill, New York; Nancy J. Murphy, of Teaneck, New Jersey; Marie J. Tomb, of Youngstown, Ohio; and David S. Schmidt, of Williamsport, Pennsylvania; with its principal place of business in York, Pennsylvania. The defendant is a New Jersey corporation with its principal place of business at Phillipsburg, New Jersey.

The complaint, brought under authority of 35 U.S.C. § 281,[1] charged infringement of plaintiff's Patent No. 2,669,269 issued to Albert S. Schmidt, February 16, 1954, on a machine employing a horizontal disc knife for slicing a plurality of bakery products such as buns and rolls. It asks for a judgment decreeing that the patent is valid and that it is owned by plaintiff and infringed by defendant. Plaintiff seeks an injunction against further infringement and that it be decreed that the defendant account to plaintiff for all gains obtained by its alleged infringement and for damages sustained by plaintiff.

The defendant, in an amended answer, denied that the patent was "duly and legally issued" to plaintiff, that it is being infringed and that plaintiff has been and will be deprived of gains and profits.

By way of affirmative defenses the defendant alleged that the patent was invalid by reason of the prior art and be-

1. "A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281.

cause Albert S. Schmidt, the patentee named in Patent No. 2,669,269, did not invent its subject matter, the real inventor being William H. Harrison or Joseph M. Hagenberger. 35 U.S.C. § 102(f).[2]

By way of counterclaim the defendant asserted that the plaintiff, aware of the invalidity of the patent, harassed and intimidated distributors and customers of defendant by charging them with infringement in the sale and use of the product of the defendant, which acts damaged the defendant to the sum of $200,000 and amounted to unfair competition.

The defendant asked for an injunction to restrain the plaintiff from continuing the alleged unfair competition and for judgment decreeing the patent described in the complaint as invalid as well as for damages in the amount of $200,000 multiplied three fold, as provided in Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

By stipulation of the parties of October 4, 1956, it was agreed that title to Patent No. 2,753,907, issued July 10, 1956, to Albert S. Schmidt and Joseph Robert Shaffer is vested by assignment in plaintiff Alto Company and that it shall be included in the complaint in the same manner and form as Schmidt Patent No. 2,669,269. This patent was on the same machine but incorporated the employment of rotary disc knives for *vertical* slicing as well. It was also agreed that the defenses made by defendant in its amended answer be taken and applied to Schmidt et al. Patent No. 2,753,907.

Shaffer's name had been added to the application for Patent No. 2,753,907 after the application was filed on December 8, 1948, it being plaintiff's contention that Shaffer contributed the idea in the latter part of 1947 of utilizing a vertical knife to separate the two rows of cluster rolls immediately preceding horizontal slicing.

The ownership by the plaintiff of the patents was admitted by the defendant. The defendant also conceded that it employed the principle involved in Patent No. 2,669,269 in manufacturing its machines and was an infringer of that patent in the event it was a valid patent.

The trial revolved around the single issue, namely, whether Albert S. Schmidt or William H. Harrison was the inventor of the subject matter of the patents, for "it is essential to the validity of a patent that it be issued upon the application of the one who is the original inventor." Cummings v. Moore, 10 Cir., 1953, 202 F.2d 145, 147. Other defenses were abandoned.

The trial of the issue of unfair competition, as alleged in the counterclaim of the defendant, was reserved pending disposition of the question of inventorship.

It is apparent that both parties are engaged in the manufacture and sale of machines to commercial bakers, employing identical principles for the slicing of buns and rolls.

Albert S. Schmidt, the inventor as alleged in the complaint, was the President of Capital Bakers, Inc., a long established bakery of Harrisburg, Pennsylvania, with branches in other cities. One of the problems with which his bakery was confronted after World War II was finding an effective and economical method of slicing and packing rolls and buns. The consumer demand for these baked goods to be used in hamburger and frankfurter sandwiches was on a phenomenal increase and pre-slicing was becoming of added importance. Indeed, the standard mechanical appliance used in the trade was known as the Reed Slicer, capable of slicing only *individual* rolls completely across. Mr. Albert S. Schmidt testified that in the early part of March of 1946, at an annual meeting of the Baker Engineers in Chicago, he became aware of some advances in the production of bakery pans which per-

---

2. "A person shall be entitled to a patent unless— * * *

"(f) he did not himself invent the subject matter sought to be patented, * * *" 35 U.S.C. § 102(f).

mitted rolls and buns to be baked in clusters of eight or other multiples. He was impressed that this would make for easier and better packaging and would be a labor saving factor. He ordered a quantity of these pans early in April 1946 from the Lockwood Manufacturing Company of Cincinnati, Ohio. They were shipped to Capital Bakeries, Inc. on July 27, 1946 (Defendant's Exhibit 33). About the same time he and some of his employees were thinking about means for slicing rolls in clusters so that when sliced the top and bottom of each roll in the cluster would adhere by way of a hinge formed at the outer crusty side.

With the help mainly of his plant maintenance man, Joseph Hagenberger, Schmidt applied himself to solving the problem of slicing cluster buns, the experiments taking place during the greater part of 1946 and early 1947. Starting with "home-made", crude cutting tools, and improvising with an old conveyor and Reed Slicer, experimentation progressed to the point where Schmidt ordered a special conveyor machine in December 1946 for continued development (See letter, Plaintiff's Exhibit U, infra). A completely successful machine, however, still eluded Schmidt, the big stumbling block being the necessity of perfecting a cutting arrangement which would prevent the rolls from being torn or damaged in the slicing process. It became apparent to Schmidt that he had personally gone as far as he he could, and that it would now require the services of an experienced engineer for the necessary refinements and adjustments, which would make the machine commercially operable.

Schmidt then wrote to one William Madden, who was known to Schmidt by virtue of a family relationship, and who had, in fact, made some helpful suggestions in the course of the experimentation, the following letter (Plaintiff's Exhibit U) dated April 14, 1947: (Madden, it should be noted, had been employed by the A. B. Farquhar Co. of York, Pa. along with Harrison and both had been jointly engaged in their own private enterprise)

"Dear Bill:

"As you know, you built us a little conveyor table for experimenting with slicing rolls. We have changed it around a number of times and have not yet gotten anything too satisfactory. Thomas tells me that the head engineer of Farquhar is coming with you and that he is not working now at all. If this is so do you think he could help us in developing the roll slicing end of this machine? If you do think so, and he is available, wire me collect his name and address so that I can ask him to come up.

"We still want to have this be a State secret and want to develop it quietly.

"Trusting to hear from you, and with best wishes, I am

"Sincerely yours,

/s/ Albert S. Schmidt"

It is difficult to conceive of a single piece of evidence having more probative value in a case such as the one at bar, than this letter. Its significant features are:

(1) The date (April 14, 1947);

(2) The reference to the "experimenting with slicing rolls";

(3) *developing* the roll slicing end of this machine" (Emphasis supplied.)

(4) The reference to something to be kept as a "State secret"; and

(5) "the head engineer of Farquhar", with instructions for his name and address to be sent to Schmidt.
The "head engineer" turned out to be William H. Harrison.

The letter establishes, with silent but eloquent persuasiveness, both the time before which Harrison could not have

entered the slicing machine arena, and the existence of roll-slicing experimentation at Schmidt's plant prior to such entrance. Harrison's insistence that he started work on the slicing machine in 1946 (although uncertain of the time of year) does not square with the facts. Corroborative testimony by friendly witnesses was far from certain and convincing; and his offering into evidence two receipts (Exhibits D–45 and D–46) totalling $2.14 for the purchase of some steel items in November and December 1946, as substantiation of his alleged 1946 work on the slicing machine—without any showing of a relationship between the work and the purchase—carries little weight.

Plaintiff's witnesses, on the other hand, were able to buttress the time factor more convincingly, with one witness in particular—McAfee—having been engaged by Harrison to make drawings of the roll-slicing machine, and by its very nature having a more intimate knowledge of the time elements involved.

Harrison's attempt to prove a 1946 participation in the invention is further contradicted by his own billing of Schmidt (Plaintiff's Exhibit V) on June 26, 1947, for initial work done. It is not reasonable to believe that Harrison, who was admittedly unemployed at this time, should wait from some time in 1946 to the middle of 1947 to bill for his services. Then, too, there is his own statement in a letter (Plaintiff's Exhibit R) written in 1954 to a Washington law firm to ascertain his rights, to the effect that he first met Schmidt in 1947.

The importance attached to this question of dates goes, of course, to the very heart of the issue of inventorship, for this court, in essence, is being asked to determine whether Harrison was paid to invent a machine to solve a particular problem, or to further refine and adjust a cluster-roll slicing machine already at a certain stage of development. In this context, too, it might be noted that the original patent application No. 2,669,269 specifically referred to 1946 as the time when the machine was invented. It is also quite apparent that a new conveyor was ordered by Schmidt from the A. B. Farquhar Company of York, Pennsylvania in December 1946 and delivered on January 17, 1947 (Defendant's Exhibit 19a), at least partly because slicing experiments on an old machine had necessitated its purchase. This is the conveying machine referred to in the letter from Schmidt to Madden, supra.

It is not disputed that Harrison contributed important refinements to the slicing machine mechanism—perhaps to the extent that Harrison actually became convinced, through pride of achievement, of his own inventorship. But it is exactly the type of refinement that a qualified engineer and designer, such as Harrison claimed to be, can reasonably be expected to make in contrast to the efforts of Schmidt, who was not an engineer by profession. The fact that Harrison's contribution made the machine commercially practicable, however, by no means establishes him as the inventor.

As it was early stated in Agawam Woolen Company v. Jordan, 1868, 7 Wall. 583, 602, 74 U.S. 583, 602, 19 L.Ed. 177:

> " * * * where a person has discovered an improved principle in a machine, manufacture, or composition of matter, and employs other persons to assist him in carrying out the principle, and they, in the course of experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention."

It is clear that Harrison was called in when Schmidt's progress in developing a cluster-roll slicing machine had reached that plateau requiring a good mechanical engineer. It is also clear that he was not called in and asked, without prior experi-

mentation by Schmidt, to produce a machine which would slice buns in clusters.

On June 14, 1947, Schmidt's patent attorney, R. L. Underwood, wrote a letter to Harrison in which he discussed requirements for filing an application for a patent for the slicing machine. He concluded the letter with the following paragraph:

"I understand that this is the invention of Mr. Albert S. Schmidt and that you have prepared the details pursuant to his instructions. Please let me have additional sketches which will clarify the uncertainties outlined above." (Plaintiff's Exhibit K)

Harrison promptly replied with the following letter dated June 16, 1948 (Plaintiff's Exhibit L):

"Dear Mr. Underwood:

"Re your letter of June 14th requesting clarification of certain arrangements and details, I have prepared a more understandable drawing, in prospective, which I am quite sure will answer all the questions put forth in your letter.

"This drawing was made and forwarded to Mr. Albert S. Schmidt for approval, previous to receipt of your letter, and it is the writer's understanding that he will forward same to you when approved.

"Your understanding is correct, in that this is the invention of Mr. Albert S. Schmidt as stated in the last paragraph of your letter, and I have developed same per his instructions.

"If further description or more detail is required please advise.

"Very truly yours,

/s/ W. H. Harrison

"WHH:CC    "W. H. Harrison
"cc: Mr. Albert S. Schmidt"

At the trial Harrison stoutly denied any knowledge of the foregoing letter. His intimation that the letter was fabricated and forged by Underwood was persistent and vehement. His denial was completely refuted by production of the stenographer to whom he had dictated the letter and who testified that he signed it and that it was mailed. This proof was convincing beyond any question of doubt. His steadfast repudiation of this damaging letter went far to destroy his credibility particularly when coupled with his evident self interest in the outcome of the case.

Further, and it has particular relevancy here, Harrison is revealed to be no novice to the patent field—having previously obtained a patent of his own (totally unrelated to the patents presently in contest). He would therefore be reasonably expected to know the significance of his affirmation of Schmidt's inventorship, and be reasonably expected to have insisted that he should be named in the patent himself were he, in fact, the true inventor.

Defendant makes much of statements alleged to have been made by Schmidt to Harrison predicting a rosy future for Harrison as a result of the latter's efforts—which predictions or promises were, apparently, never fulfilled. Rather than being a recognition of inventorship, the significance of these remarks—assuming their veracity—would only indicate that Schmidt's personal sense of gratitude for Harrison's efforts did not materialize to as high a degree as Harrison expected.

As the testimony brought out Schmidt thought of the slicing process and the machine to produce it in connection originally with his own bakeries. Only later did it dawn upon him that there were commercial possibilities in a wide distribution of the mechanical slicer to the baking industry. It was when this concept developed that he undoubtedly intimated to Harrison that he would share substantially in the enlarged importance of the machine. However, the mere fact of this commercial success of the machine cannot be held to convert

Harrison's contribution to the status of inventiveness.

However, the association between Schmidt and Harrison which began with the latter's work on the slicing machine, appeared—from correspondence offered into evidence—to have ripened into a warm regard for each other bordering on real affection, continuing even as late as January 23, 1951. An unfortunate chain of circumstances followed some time after January 1951, in the course of which Harrison suffered serious setbacks in his health and financial position. It was during this period that a deterioration of their previously friendly relationship developed, which did not improve after defendant's "discovery" of Harrison.

Many other details were brought out in evidence bearing upon the inventorship in this case. Each cannot and need not be discussed. The main determinative elements have been aired herein and they point inevitably to inventorship by Schmidt. In the face of this, and with defendant having failed to overcome the presumption of validity of plaintiff's patent, and admitting to infringement, the validity of Patent No. 2,669,269 must be sustained. Patent No. 2,753,907, application for which was filed on the same day (December 8, 1948) and allowed on July 10, 1956, adds to Patent No. 2,669,269 only the device of a vertical rotary disc knife to precede the horizontal knife in the process of slitting the rolls and buns without tearing them. It follows that its validity is likewise upheld.

The foregoing opinion shall be considered as satisfying the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C. for findings of fact and conclusions of law.

Settlement of an order in conformity herewith shall be noticed by plaintiff for Monday, February 18, 1957, a motion day. An order may be filed sooner if defendant consents as to form, reserving to it its objections as to substance.

