**840**

JONES KNITTING CORPORATION, the Russell Manufacturing Company, Inc., Union Underwear Company, Washington Mills Company, West Knitting Corporation, Oneita Knitting Mills and P. H. Hanes Knitting Company, Plaintiffs,

v.

John E. MORGAN and John E. Morgan Patents, Inc., Defendants.

Civ. A. No. 25348.

United States District Court
E. D. Pennsylvania.

May 12, 1960.

Roberts B. Larson (of Larson & Taylor), Washington, D. C., and Ernest Von-Starck (of Morgan, Lewis & Bockius), Philadelphia, Pa., for plaintiffs.

Robert B. Frailey and Henry N. Paul, Jr. (of Paul & Paul), Philadelphia, Pa., for defendants.

GOODRICH, Circuit Judge.

The plaintiffs in this case seek a declaratory judgment that U. S. patent No. 2,839,909 to John E. Morgan as inventor is invalid.

At this stage of the case the plaintiffs seek a summary judgment based on 35 U.S.C. § 102 which sets forth the conditions for patentability. Subsection (f) of this section says that the applicant is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." The plaintiffs urge here that the statements made in their depositions by Mr. Morgan, the patentee, and his foreman, Mr. Ditzler, show that Mr. Morgan was not the inventor.

The argument made is that to be entitled to a patent as an inventor the applicant must have much more than a general idea of what he wants to accomplish; he must actually perceive the means of accomplishing it. We are taken back to Supreme Court decisions of nearly a hundred years ago, Agawam Co. v. Jordan, 1868, 7 Wall. 583, 74 U.S. 583, 19 L.Ed. 177 and Collar Co. v. Van Dusen, 1874, 23 Wall. 530, 90 U.S. 530, 23 L.Ed. 128. The defendants in opposing the plaintiffs' motion do not dispute the authority of these cases, as indeed they could not. Nor do they argue against the general proposition urged by plaintiffs. But they say that, contrary to the plaintiffs' argument, the testimony in these depositions show that Mr. Morgan was indeed the inventor of the subject matter for which the patent was granted. The court agrees with the defendants.

The subject matter of the patent has to do with the knitting of a "heat insulating knitted fabric" and a method of knitting such fabric on a certain type of machine. The fabric is a rib-knitted one made on a circular knitting machine and it incorporates tuck stitches in such a way as to create air-entrapping cells on both sides of the fabric. These cells provide the heat-insulating or "thermal" property of the fabric.

Morgan has been in the underwear business since 1930. In 1945 he went

into business for himself. His formal education is limited; he finished but the first year of high school. His deposition shows some difficulty in answering skillfully formulated questions in technical terms. But it also shows him to be a practical experienced man in the "applied science" of underwear knitting.

According to the depositions, Morgan began work on the idea of developing this two-sided fabric in April of 1956. It is agreed that he did not have any such worked out plan at that time as would have entitled him to a patent. But he and his foreman, Ditzler, worked on the thing during the summer and by September had secured the result which Morgan was after. The plaintiffs say that it was Ditzler who really did the business of turning the general idea into a patentable invention. The court does not think so. Ditzler worked with Morgan as a loyal employee should. But Morgan throughout was calling the tune. Here is a representative set of questions and answers from Ditzler's description of their method of work.

"Q. Was the development of this fabric, as far as you know, the subject of Mr. Morgan's attention during this entire period from April of 1956 to November of 1956? A. Let me say this—he was obsessed with that idea, that the fabric could be made to include or duplicate the heat insulating qualities of the thermal fabric. How it could be done, or whether it could be done, he didn't know, but he was determined he was going to do everything possible to find out.

"Q. Did Mr. Morgan give you instructions from time to time regarding the development of the fabric? A. Yes he did.

"Q. Who was it who suggested that the ribs and valleys of the fabric be composed of two wales [sic] each? A. Mr. Morgan had the final decision on all, on everything that I did, and he passed judgment, whether it suited him or whether it didn't, so it was his final decision whether

it was acceptable or not. So I would say it was his decision—not in so many words, but it was his decision that, that is, when we arrived at that point, that's what we were going to accept, or he was going to accept, not me—I had no part of it.

"Q. Who was it that suggested that there be multiple tucking on both the dial and cylinder needles? A. There again it was Mr. Morgan's idea, because I fought him all the way on tucking on the cylinder because I told him I never saw it, I never heard of it, and I didn't think it could be done.

\* \* \* \* \* \*

"Q. \* \* \* Now, the question is more specific. When it came to the stage of development where you incorporated multiple tucks on both the dial and cylinder needles, did you or did you not receive instructions from Mr. Morgan to proceed with that arrangement? A. Yes, I did.

"Q. What was your reaction or your feeling or your belief or your thinking regarding his instructions to proceed that way? A. Well, like I stated before, that I couldn't believe that this could be done, and knowing the peculiarities of a knitting machine, I just couldn't conceive that this thing could work like that, and I, well, I fought him on it as much as I could, without getting throwed out of the place.

"In fact I delayed it from day to day until there was no more way of getting out of it, why, then I had to follow his instructions.

"After all, he was paying me, so I thought if he wants me to waste his money on an idea that I didn't think was practical, I would go along. It turned out I was wrong."

And again, this time from Morgan, there are these significant questions and answers:

"Q. Just to get that clear, in your patent, Figure 1, you have shown needle arrangements with the

two cylinder needles up on the top, then two down needles—you also spaced over on the right below alternating back and forth. You have mentioned that you tightened up the stitch by—well, put it this way—

"You were mentioning originally you had more than two needles in a group, is that right? A. We probably had three or four out down here.

"Q. Three or four over to the right? A. Yes.

"Q. Then by narrowing the stitch you removed some of those needles and brought the groups closer together? A. That's right. We built up the valley below the group closer to get a pocket something like this (indicating) in width.

"Q. Who did that? Mr. Ditzler? A. Mr. Ditzler, but he would come in, tell me what he had done. We'd discuss it, talk about what he could do, and send him out to do it. He was working under my instructions all the time."

\* \* \* \* \* \*

"A. If he [Ditzler] would come in with the cloth with four needles in and three out, it was too wide, and I'd say 'Alvin, it's too wide with four needles in and three needles out, let's drop a needle here, or drop a needle there'.

"He'd go out, and do that, and this was over about a four month period.

"Q. You outlined the steps that you wanted him to take? A. That's right, and he brought the cloth back and I told him it didn't look right—like, if he told me he had four needles in, I'd say let's take one out or two out, and get it where it would be satisfactory."

It may well have taken a skillful patent lawyer to put all these matters in terms of what was accomplished into the technical form of a satisfactory patent application. And it may well be that when it comes to describing these formal matters in technical terms Morgan does not pretend to be his own solicitor or to have the vocabulary of a man with an engineering degree. But, according to his and Ditzler's statements, Morgan knew what he wanted and kept trying with Ditzler's help, but always under Morgan's direction, different experiments until the desired result and method was achieved.

The court has been asked to make a finding that Morgan is the inventor. The matter brought before the court on this motion, however, is for summary judgment against Morgan on the basis that he himself has shown that he is not the inventor. No matter except that will be ruled upon. The motion for summary judgment will be denied.